CASE 42—PETITION EQUITY—JUNE 2.

# Hite's Devisees v. Hite's Executor.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONSTRUCTION OF WILL—LIFE TENANTS—EQUITABLE CONVERSION.
—A testator having, by his will, given the executors full power to sell
his real and personal estate and re-invest the proceeds so as to be safe
and produce income, and then directed that the net income be paid to
certain persons for life, remainder to others, the life tenants are only
entitled to income actually realized, and not to any part of the princi-
pal as compensation for the delay in converting the unproductive estate.
The doctrine of equitable conversion will not be applied, it being man-
ifest from the entire will that it was the testator's intention that nothing
should be allowed the life tenant, save actual income. If, however,
any taxes upon, or sums by way of improving, the unproductive real
estate have been paid out of the income of the other estate, the same
should be allowed the life tenant out of the sales of the unproductive
estate.

2. RIGHT OF DEVISEE OF STOCK TO DIVIDEND EARNED BEFORE TESTA-
TOR'S DEATH.—Dividends, whether of stock or payable in money, are
non-apportionable, and must be considered as accruing in their entirety
as of the date when they are declared. Therefore, when the stock is
devised to one person for life, remainder to others, if a dividend is
declared after the life tenancy has begun the whole of it belongs to the
life tenant, although a portion of it may have been earned before the
death of the testator.

3. LIFE TENANT ENTITLED TO DIVIDEND DECLARED IN STOCK.—If a
dividend declared by a corporation be, in fact, a profit, it should, although
declared in stock, be held to be income, and therefore is not to be treated
as a part of the capital, but paid to the life tenant. But this rule should
not be held to embrace a dividend which was not declared out of earn-
ings, but out of profits made by the sale of a piece of real estate that
the corporation owned at the testator's death, and which is, therefore,
capital and not income.

4. THE PRIVILEGE GIVEN BY A CORPORATION TO ITS STOCKHOLDER TO
TAKE ADDITIONAL STOCK AT PAR, when the stock is worth more, can
not be regarded as income, and, therefore, does not belong to the life
tenant.

5. WHERE TRUSTEES PURCHASE STOCKS BY WAY OF RE-INVESTMENT AT
MORE THAN THEIR PAR VALUE, the cost of the stocks is to be charged to

Vol. 93—17

the principal without any deduction from the life tenant on account of
the excess above the par value.

6. The income should bear the annual expense of its collection
and disbursement, but the expense of conversion and re-investment,
being for the benefit of both the remainderman and the life tenant,
should be apportioned.

SHACKLEFORD MILLER for appellants.

1. As between life tenants and remaindermen, the doctrine of equitable con-
version will not be applied to the proceeds derived from the sale of un-
productive realty or personalty, in the absence of an express direction
to, or duty resting upon, the trustees to sell. If the trustees are
given a *discretion* to sell, no equitable conversion can be worked.
(Pomeroy's Equity Jurisprudence, sec. 1160, vol. 3, sec. 136, Note;
Wright v. Trustees M. E. Church, 1 Hoff. Chy., 219; White v. How-
ard, 46 N. Y., 162; Gourley v. Campbell, 66 N. Y., 173; Hobson v.
Hale, 95 N. Y., 588; *In re* Bingham, 27 Northwestern Reporter (Ill.),
1060; Howard v. Peavy, 128 Ill., 435; Mellon v. Reed, 123 Pa. St., 14.)

2. Even though the executors should be directed to sell, there is no reason
or authority for making the conversion relate back to the day of the
testator's death.

3. Whatever may be the law of other States, there are five decisions of this
court which decide that the doctrine of equitable conversion, as sought
to be applied to this case, is not law in Kentucky. (Clay v. Hart, 7
Dana, 11; Samuel v. Samuel's Heirs, 4 B. M., 253; ·Christler's Trustees
v. Meddis, 6 B. M., 35; Haggard v. Rout's Heirs, 6 B. M., 247; Hocker
v. Gentry, 3 Met., 472.)

4. Where trustees buy bonds or other securities at a premium, the income
thereof to be given to life tenants, equity requires that there should be
retained out of the income an amount sufficient to make up the
deficiency in the capital, should such bonds be held until maturity.
(Balch v. Hallett, 10 Gray, 402; Clarkson v. Clarkson, 18 Barb., 650;
Kinmouth v. Brigham, 5 Allen, 270; Simpson v. Moore, 30 Barb.,
640; Healey v. Tappan, 45 N. H., 266; Earp's Appeal, 28 Pa. St.,
370; New England Trust Co. v. Eaton, 140 Mass., 532.)

5. As between life tenant and remainderman, a stock dividend declared
upon stock held in trust is "principal" and not "income." The declara-
tion of the corporation is conclusive as to the character of the dividend.
(Brander v. Brander, 4 Ves., 800; Irving v. Houston, 4 Patton H. of
L.; Paris v. Paris, 10 Ves., 185; Clayton v. Gresham, 10 Ves., 288;
Witts v. Steere, 13 Ves., 363; Norris v. Harrison, 2 Madd., 268;
Hooper v. Rossiter, McClelland, 527; Price v. Anderson, 15 Sim., 473;
*In re* Barton's Trust, L. R., 5 Eq., 238; Bates v. McKinley, 31 Beav.,
280; Sproule. v. Bouch, 29 Chy. Div., 653; Bouch v. Sproule (1887),
12 Appeal Cases, 385; Minot v. Paine, 99 Mass., 101; Leland v. Hay-
don, 102 Mass., 542; Rand v. Hubbell, 115 Mass., 474; Adams v.

Adams, 139 Mass., 452; Ricketts v. Howdney, 33 Alb. Law Jour., 427; Brown on Petition, 14 R. I., 271; Greene v. Smith (R. I.), 19 ·Atlantic Rep., 1081; Hyatt v. Allen, 56 N. Y., 553; Williams v. Western U. Tel. Co., 93 N. Y., 162; Kernochan's Case, 104 N. Y., 618; Gibbons v. Mahon, 136 U. S., 564.)

6. The right to buy new shares of stock belongs to the trust estate as a part of its capital. This right had a vendible market value, and it was error to give it to the life tenants as income. (Cook on Stock and Stockholders, sec. 559; Morawetz on Corporations, sec. 454; Beach on Corporations, sec. 473; Gray v. Portland Bank, 3 Mass., 364; Jones v. Morrison, 31 Minn., 140; Eidman v. Bowman, 58 Ill., 344; Van Blarcom v. Dager, 4 Stew. Eq., 783; Atkins v. Albree, 12 Allen, 359; Billings v. Billings, 10 Mass., 228; Moss's Appeal 83 Pa. St., 264; Biddle's Appeal, 99 Pa. St., 278; Brinley v. Grou, 50 Conn., 73; Pierce v. Burroughs, 58 N. H., 303; Greene v. Smith (1890), 19 Atlantic Rep., 1081 R. I. Case.)

7. The annual expenses of conducting the trust should be paid out of the income; otherwise the trust fund will gradually diminish, instead of being "kept together" and "undivided" as directed by the will. (Webster's Dictionary, *verba*, "income," "net"; U. P. R. R. Co. v. United States, 99 U. S., 402; Pierce v. Burroughs, 58 N. H., 304; Cogswell v. Cogswell, 2 Edw. Chy., 231.)

8. The record shows that the trustees have already bought eighty-six shares of the New Pullman Stock and fifty shares of the New Fidelity Stock with the trust funds, and hold them *as investments;* they can not now distribute those shares to the life tenants.

HUMPHREY & DAVIE FOR EXECUTORS.

1. The will directed the trustees to sell all of the unproductive property of the testator, and invest it so as to be safe and produce income. This gave to the executors the discretion as to the time of sale; but, so that the discretion, when exercised, should not injure either the life tenants or the remaindermen, the court properly directed that the life tenants should receive out of the proceeds of the sale a part of the purchase money. (1 Perry on Trusts, sec. 450; 2 Perry on Trusts, secs. 548 and 549; Lewin on Trusts, pp. 301, 302, 305; 2 Williams on Executors, top page 1497, note; Howe v. Earl of Dartmouth, 2 W. & T. Leading Cases, 686, 687, 696, 702, 713, 715, 716; Healey v. Tappan, 45 N. H., 243; s. c. 86 A. D., 159; Yates v. Yates, 28 Beav., 638; Wilkinson v· Duncan, 23 Beav., 469; Earl of Chesterfield's Trust, L. R. 24' Chancery Division, 643.)

2. Where a trustee buys a security and pays for it more than par, he is not bound to retain as against the life tenant a sinking fund which will absorb the premium at the date of the maturity of the bond. (Farmer v. Tweddle, 10 Abbott, New Cases, 94; Whitmore v. Beckman, 2

Demarest, 285; Furnas' Estate, 12 Philadelphia, 74; 2 Perry on Trusts, sec. 547; Brown v. Gellatly, L. R., 2 Chancery Division, 758.) The arguments upon both sides of this question are fully set out in the opinions in the two cases, Heminway v. Heminway, 134 Mass., 446, and New England Trust Company v. Eaton, 140 Mass., 532; s. c. 54 Am. Rep., 493.)

3. Where corporations have declared stock dividends, or have given to the stockholders the right to purchase new stock at par, which is in fact worth a premium, such stock dividends and right to purchase belong to the life tenant and not to the remainderman. (2 Perry on Trusts, sec. 545; Cook on Stock and Stockholders, secs. 553, 554, 555, 556, 559; the *English Cases:* Bouch v. Sproule, L. R., 12 Appeal Cases, 385; s. c., Sproule v. Bouch, Law Rep. 27, Chancery Division 653; Jones v. Ogle, Law Rep. 14, Eq., 419; *In re* Hopkins Trust, L. R. 18 Eq., 697; *Supreme Court United States:* Gibbons v. Mahon, 137 U. S., 547; *Massachusetts:* Minot v. Payne, 99 Mass., 101; s. c., 96 A. D., 705; DeLand v. Williams, 101 Mass., 571; Neeland v. Hayden, 102 Mass., 542; Rand v. Hubble, 115 Mass., 461; *Rhode Island:* Green v. Smith, 17 R. I.; s. c., 19 Atlantic Reporter, 1081; *Connecticut:* Brinkley v. Grou, 50 Conn., 66; s. c., 47 Am. Rep., 619; *Maine:* Richardson v. Richardson, 75 Maine, 570; s. c., 46 Am. Rep., 429; *Georgia:* Millen v. Garrard, 67 Ga., 284; s. c., 44 Am. Rep., 721; *New York:* Clarkson v. Clarkson, 18 Barb., 646; Simpson v. Moore, 30 Barb., 638; *In re* Woodruff's Estate, Tucker, 58; *In re* Kernochan's Estate, 104 N. Y., 630; *Pennsylvania:* Earp's Appeal, 28 Pa. St., 368; Wiltbank's Appeal, 64 Pa. St., 256; s. c., 3 Am. Rep., 585; Moss' Appeal, 83 Pa. St., 264; s. c., 24 Am. Rep., 164; Vinton's Appeal, 99 Pa. St., 434; s. c., 44 Am. Rep., 116; Biddle's Appeal, 99 Pa. St., 281; *New Jersey:* Van Doren v. Olden, 4 C. E. Green, 177; Ashurst v. Field's Executor, 11 C. E. Green, 1; *New Hampshire:* Lord v. Brooks, 52 N. H., 72; Pierce v. Burroughs, 58 N. H., 302; *Kentucky:* Young v. Miles' Executor, 10 B. M., 287; Young v. Smith, 9 Bush, 423.)

4. The executors having, in dealing with the estate, obeyed the directions of the Court of Chancery, whose advice they sought, are protected. (Frazier v. Page, 82 Kentucky, 74.)

WM. LINDSAY FOR LIFE TENANTS.

Brief not in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The questions in this case arise between tenants for life, and remaindermen.

The will of W. C. Hite provides:

1. "I nominate and appoint my friend, Thomas L.

Barret, and my son, William W. Hite, my executors and trustees, and devise and bequeath to them my entire estate, real, personal, and mixed, in possession, remainder, or reversion, and wherever situated, for the purposes and upon the trusts herein indicated. I give them full power and authority to sell, convey, and reconvey in their discretion, any real estate which I may own, or any which they may purchase for my estate. I give them full power and authority to sell, transfer, and deliver any or all of my stocks, bonds, and securities of every kind, and full power and authority to invest and re-invest, from time to time, the proceeds of *such* sales in other stocks, bonds, and securities and improved real estate, whether situated in this State or elsewhere.

" Whenever sales are made by my said trustees the title shall pass, and the purchaser need not look to the application of the purchase money. It is my will, and I give to my said trustees all power and authority which may be necessary and proper to carry out the purpose and trusts as herein indicated; and I do not desire that they be required to give bond with security, either as executors or trustees; nor do I wish them to file any inventory of my estate in the county court.

" The estate devised and bequeathed to my said trustees is for the use and benefit of my wife, Mary E. Hite, and my children and their descendants, and my devisees as indicated in this my will."

8. " After the payment of my funeral expenses and just debts, and the payment of and provision for the legacies and bequests as directed in this will, I desire and direct my trustees to manage, control, invest, and dispose of the balance of my estate, of every kind and description,

including, after my wife's death, that part of my estate which has been set aside for her annuity, in their discretion, so as to be safe and produce income.

"My trustees shall, ten (10) years after my death, if my trust estate in their hands be sufficient for that purpose, pay over to each of my children ten thousand ($10,000) dollars, and if any of my children be dead, leaving children then alive, they shall be paid their parent's part; but should any of my children be dead without issue living, that child's share remains as part of the trust fund. *  *  *

"My trustees shall, between the time of my death and the payment of said sums of $10,000, pay over the net income arising from said general trust estate to my wife, Mary E. Hite, and my children, Mary E. Winston, Nannie T. Hite, Wm. W. Hite, Louis Hite, and Allen R. Hite, one sixth to each. *  *  *

'If there should be any of my estate remaining after the payment of said sums directed to be paid my children, I desire it to be kept together by my trustees and made productive of income.

"This estate shall remain undivided, and continue in trust during the lives of my wife and children, and during the life of the longest liver of them. At the death of the longest liver, the trust shall cease, and the trust estate be divided and distributed among the descendants of my children, according to the provisions of the Statutes of Descents and Distributions as then existing in the State of Kentucky.

"The net income arising from said trust estate shall be divided annually between my wife and children, one sixth to each."

It is contended for the life tenants that, under these provisions, the unproductive real estate of the testator should be treated as converted as of the day of his death; and that as the trustees sold it from time to time, the entire purchase money realized should not be treated as a part of the principal of the trust fund, but such a sum only as with six per cent. interest per annum from the time of his death would amount to the purchase money; and that the difference between the two amounts should go to the life tenant. In other words that, under the doctrine of equitable conversion, such a portion of the purchase money as would equal this interest must be regarded as income, and not as capital. The lower court, erroneously as we think, accepted this view.

The intention of the testator must govern. He undoubtedly intended that the trustees should so change and invest the estate as to make all of it productive of income. This is evident from the eighth clause of the will, which directs them to invest and dispose of it "so as to be safe and produce income." He must have known, however, that this could not probably be done at once without sacrifice. This doubtless led to his giving them a broad discretion in the matter; and while he provided that the life tenants should have any net income from his estate, yet he no doubt had in view income actually realized. The estate was large. Much of it at his death was already productive, and it can not well be supposed he expected a part of the principal would be given to the life tenant to compensate for the delay which he knew must occur before the remainder of it could be made so.

The doctrine of equitable conversion is at best an artificial, arbitrary one. It will not be applied, unless it is

made the duty of the trustee to sell. Conceding, as we think is true, that this is so in this instance, and that the discretion given relates only to the time when it shall be done, yet in view of the character of the entire estate, and the will itself, which says the proceeds of the sales are to be re-invested, it is clear to us the testator did not intend income to be paid to the life tenant on account of property from which none was realized.

If it be said, if this be so, then the trustees could by delay enrich the remainderman at the expense of the life tenant; yet the testator, as is evident from the will, did not intend the condition of the latter to be better than his own; and if he had lived no income might have come to him for years from this portion of his estate, or from some of his stocks; and nothing should be allowed the life tenant save actual income arising from the testator's estate, because this was his evident intention and expectation. If, however, any taxes upon, or sums by way of improving, the unproductive real estate, have been paid out of the income of the other estate, the same should be allowed the life tenant out of the sales of the unproductive estate. The testator never intended the life tenant to thus protect and add to the value of the real estate from which he was receiving no benefit. The fair presumption is that the testator intended such a re-imbursement.

Since the testator's death certain stock dividends, based upon earnings and profits, have been declared upon some of the stocks. It is claimed by the remaindermen that they belong to the principal of the estate, while the life tenants assert they are entitled to them as income. The question is beset with difficulties. It is urged by the former that the mere declaration as " a stock dividend "

by the company is conclusive in their favor; that being
*stock* it must be treated as a part of the capital, and that
the conclusion of the company to turn all their profits
into capital is a matter in its discretion, and conclusive
upon the courts.

As between the company and the shareholder the action
of the directors in determining whether the earnings shall
be capitalized in stock dividends, or paid out in cash, is
conclusive; but when once declared, although in the form
of stock, it is the province of the law to determine
whether they belong to the *corpus* of an estate and are
to benefit the remainderman, or whether they shall go to
the life tenant as income.   It is the rule as settled by the
current of authority that dividends, whether of stock or
payable in money, are non-apportionable, and must be
considered as accruing in their entirety as of the date
when they are declared.   If, for instance, the life tenancy
has begun when a cash dividend is declared, it belongs to
the life tenant, although it may result in part from profits
previously earned.   It goes to him irrespective of the
time when it was earned.   No inquiry will in such a case
be made as to what portion of the profit upon which the
dividend was based was earned before or after the death of
the testator for the purpose of apportioning it between
the tenant for life and the remainderman.

The difficulty attending such an inquiry, the impossi-
bility of attaining accuracy, and of ascertaining the many
sources from which the profit has been derived, are the
reasons for this rule; but it does not also follow that the
declaration of the company, as to the character of the
dividends, determines its legal *status* and to whom it shall
belong.   It is the law which says that the time when it

is declared shall be deemed the date of its accrual, and so it is for the law, when it is once declared, to determine its ownership.

There is great conflict of decision, however, upon this point. The English rule seems to be that the tenant for life is entitled to cash dividends only. This was declared in the early case of Brander v. Brander, 4 Vesey, 801, but in a country where entails and perpetuities are favored. It has, however, been followed by many of the highest courts of this country, but the reasoning of their opinions is not satisfactory to us. They are perhaps largely the result of regard for former decision; but the question is of first impression in this State. Where a dividend, although declared in stock, is based upon the earnings of the company, it is in reality, whether called by one name or another, the income of the capital invested in it. It is but a mode of distributing the profit. If it be not income, what is it? If it is, then it is rightfully and equitably the property of the life tenant. If it be really profit, then he should have it, whether paid in stock or money. A stock dividend proper is the issue of new shares, paid for by the transfer of a sum equal to their par value from the profit and loss account to that representing capital stock; and really a corporation has no right to declare a dividend, either in cash or stock, except from its earnings; and a singular state of case—it seems to us an unreasonable one—is presented, if the company, although it rests with it whether it will declare a dividend, can bind the courts as to the proper ownership of it, and by the mode of payment substitute its will for that of the testator, and favor the life tenant or the remainderman, as it may desire. It can not in reason be considered that

the testator contemplated such a result.   The law regards
substance, and not form, and such a rule might result not
only in a violation of the testator's intention, but it would
give the power to the corporation to beggar the life ten-
ants who, in this case, are the wife and children of the
testator, for the benefit of the remaindermen, who may
perhaps be unknown to the testator, being unborn when
the will was executed.   We are unwilling to adopt a rule
which, to us, seems so arbitrary and devoid of reason and
justice.

   If the dividend be in fact a profit, although declared in
stock, it should be held to be income.   It has been so held
in Pennsylvania and many other States, and we think it
the correct rule.   Earp's Appeal, 28 Pa. St., 368; Cook's
Law of Stocks, sec. 554.   The lower court adopted
this view, but it should not be held to include a dividend
like that declared by the Birmingham Rolling Mill Com-
pany.   It was not declared out of earnings, but out of
profits made by the sale of a piece of real estate that the
company owned at the decedent's death.   His interest in
it was, at the time of his death, a part of the *corpus* of
his estate, and it is properly capital and not income.

   It was also error to hold that the privilege, given by a
corporation to its stockholder to take additional stock at
par when the stock is worth more, belongs to the life ten-
ant.   This right stands upon a different footing from the
claim to a stock dividend.   It is a mere incident of the
old stock.   It is a right appurtenant to it, and as such, is
a part of the capital.   It can not be fairly considered as
income, but is inherent in the shares of stock in their
creation.   While the value of the right must depend
essentially upon the success of the business of the com-

pany, this does not alter the nature of the right, and the stock is properly a part of the *corpus* of the estate of the owner. This incident of the stock was, at the death of the testator, a part of his estate, and the option merely operated to increase or broaden the capital or change the manner of the investment. It gave the right to a larger interest in the capacity of the company to make profits, but not to the income itself. The life tenant should not, however, be required to restore the stocks gotten under these options, but their value should be ascertained as of the time when the options were given, and the life tenant required to account for the profit as a part of the capital of the estate. Matter of Kernochan, 104 N. Y., 618; Brinley v. Grou, 50 Conn., 73.

The lower court, in adjusting the conflicting rights of the parties, adopted what is called the "sinking fund" theory; that is, it held that where the trustees purchased stocks by way of re-investment, at more than their par value, they must retain out of the income from them and add to the principal of the estate a sum equal to the excess above the par value; else, as was said, at the maturity of the bonds or stocks the principal would be lessened, as they would then only be worth their par value. This was error, and the appellees question the correctness of the ruling by a cross-appeal.

It is urged that this is necessary to preserve the principal of the estate intact, and do substantial justice between the life tenant and the remainderman.

The objects of investment were, however, two-fold, to-wit: safety, and the production of income. The investment must be a safe one in order to preserve the capital, and must also be an income-producing one to benefit the

life tenant.    Investments in stocks above par are not only more productive, but more secure ; and both qualities must be kept in view.    The bonds might be bought at a premium and then sold at a still higher one; and then, if enough is also taken from the income and added to the principal to balance the excess above par at which they are purchased, the remainderman will be doubly benefited.

Some investments will increase, while some will diminish, in value.    Bonds might be purchased under par, but their face value collected at maturity, and all would be added to the capital.    All things considered, it seems to us the safe rule is to let those matters balance themselves, as they are likely to do in time.

The testator no doubt contemplated the matter in this light, and we think intended that, where an investment was made, the cost of it was to be charged to the principal without any deduction from the income of the life tenant.    The costs appear to have been fairly apportioned.    The annual expenses of  collecting and disbursing the income should come out of it ; but the expenses of conversion and re-investment were for the benefit of both the remainderman and the life tenant, and it was proper to apportion them.

The judgment is reversed upon both the original and cross-appeal, and cause remanded for further proceedings consistent with this opinion.