## JACKSON *v.* MADDOX, trustee, *et al.*

A testator devised a certain number of shares of the capital stock of a corporation to a trustee, in trust "to pay to my said daughter the income thereof for and during her natural life, and at her death to be equally divided between her children and grandchildren," as provided in a previous item of the will. After the testator's death, the corporation issued to the trustee additional shares of stock by virtue of a resolution of its stockholders, reciting that the corporation had accumulated a surplus and that it was desirable to increase the capital stock to a certain sum which was within the charter limitation, and that it was to the best interest of the corporation that its surplus be capitalized and additional shares of stock to the extent of the amount of surplus capitalized be issued to the stockholders proportionately to their holdings of stock. Under a proper construction of the will, and in the light of the rule as formulated in Civil Code (1910), § 3667, the additional shares of stock attach to the corpus in the hands of the trustee and go to the remaindermen on the death of the life-tenant; there being no contention that the corporate action was ultra vires or in fraud of the life-tenant's rights.

MARCH 4, 1911.

Equitable petition. Before Judge Bell. Fulton superior court. December 18, 1909.

*King & Spalding & Underwood,* for plaintiff.

*Smith, Hammond & Smith* and *Tye, Peeples & Jordan,* for defendants.

FISH, C. J. The testator by his will gave one half of his stock in a banking company to his son. The other half he gave to his

son to be held and controlled by him as trustee, "for the following purposes, viz.: to pay to my said daughter the income thereof for and during her natural life, and at her death to be equally divided between her children and grandchildren." The banking company declared dividends on its stock, and also built up a large surplus fund. After some years the company passed a resolution increasing its capital stock from $200,000 par value, to $500,000 par value, which was within its charter authority; and declaring that the increase of capital stock be issued as full-paid stock upon the existing capital stock of the corporation, and that certificates therefor be made out in the usual form in shares of $100 each, "in favor of the holders of the present outstanding certificates of the stock of this corporation at the rate of one and one half shares for each outstanding share, and the aggregate amount thereof transferred on the books of this corporation from surplus account to capital-stock account." The additional shares of capital stock were issued accordingly, and certificates for the proper amount were issued in the name of the testator's son as trustee. The present litigation appears to have arisen from an honest difference of opinion as to whether the additional shares of stock thus issued belonged to the life-tenant absolutely, or ranked with the original shares of stock held by the trustee for the benefit of the life-tenant and remaindermen. For the purpose of determining this question of doubt an equitable petition was filed. On demurrer the judge of the superior court held, in effect, that the additional shares of stock became a part of the corpus of the estate and did not belong to the life-tenant alone, and dismissed the petition, and to this exception was taken.

There are two lines of authority on the subject of whether shares so issued become part of the corpus, or whether they rank as dividends and belong to the life-tenant. One of these lines of authority will be found illustrated by the decisions of the Supreme Court of the United States, in Gibbons *v.* Mahon, 136 U. S. 549 (10 Sup. Ct. 1057, 34 L. ed. 525); and of the Supreme Court of Massachusetts in Minot *v.* Paine, 99 Mass. 101 (96 Am. D. 705). The other line may be represented by Earp's Appeal, 28 Pa. 368; Pritchard *v.* Nashville Trust Co., 96 Tenn. 472 (36 S. W. 1064, 33 L. R. A. 856); Hite *v.* Hite, 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. R. 189). When the law of this State was

codified, in view of the older English cases and of such decisions as had then been made in America, one of these lines of authority had to be selected as containing the correct rule. The codifiers in substance selected the first of the two rules mentioned above. As formulated in the present Code (1910), § 3667, the. rule is thus stated: "The natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the corpus— such as an issue of new stock upon the shares of an incorporated or joint-stock company, attaches and goes with it to the remainderman." What is meant by "the natural increase of the property?" As applied to corporate stock it means dividends. Clearly it can not mean the appreciation in value of the corpus of the property. If a lot of land should be left to A for life with remainder to B, and at the time of the devise it was of the value of $1,000 but by appreciation in value it came to be worth $5,000, it seems very clear that it was not the intention of the lawmakers to say that the life-tenant could claim $4,000 of this increased valuation as belonging to her, and leave for the remainderman only $1,000. as the original value. In that event the rents or income derived from the property, or its use, would belong to the life-tenant, but any increase in value of the corpus would belong to the remainderman. The word "increase" may at first sight be thought to indicate any increase of value of the corpus, but the illustration given will show that such is not the case. That word is used in a number of sections of the code as indicating the issue of animals, or that which issues from the principal. Thus the Civil Code (1910), § 3477, declares that "The hirer of things acquires a qualified ownership of them for a time, which entitles him to all their increase." § 3651 declares that "The increase of all animals follow the condition of the mother, and belong to the owner of the mother at the time of birth." § 3537 states that "All increase of property in pawn belongs to the pawner." § 3524 states that "The increase, except by special contract, belongs to the lender." § 3903 declares that "The income, profit, or increase of. specific legacies, as a general rule goes with the legacy." We think it is evident that the first sentence of § 3667, above quoted, as applied to stock in a corporation, does not mean that the tenant for life has any interest in the increased value of the stock, whether that value arises from fortunate investment on the part of the corporation, or from appreciation of the

value of its property on account of the growth of the community in which it is situated, or on account of the surplus fund which it has built up. "The natural increase" of shares of stock is the dividends declared upon them. The latter part of the section under consideration states that "any extraordinary accumulation of the corpus" attaches to the corpus, and goes to the remainderman. What is meant by an extraordinary accumulation of the corpus is illustrated by the words, "such as an issue of new stock upon the shares of an incorporated or joint-stock company." Thus the codifiers distinctly selected the rule that the issue of new stock upon shares of a corporation constituted an extraordinary accumulation, and stated such an issue as being a typical case to illustrate the meaning of the words, "extraordinary accumulation," as used by them. The original code was adopted by legislative enactment, and later codes have also been adopted, containing the language quoted. An additional indication that the use of the words "natural increase" was in the sense above mentioned occurs in the section as codified in the original code. At the time of its adoption slaves were owned in this State as property. The first sentence of the section as originally codified read as follows: "The natural increase of the property, unless it be a slave, belongs to the tenant for life." Code (1863), § 2236. Clearly this exception to the increase of a slave shows that the word was used in the sense of the issue or offspring of such slave.

It will thus be seen, that, whatever may be the ruling or reasoning of courts of other States, under our code the natural increase of stock is dividends, no matter whether there is an increase in the value of the corporate property or not, or whether this may arise in part from the laying up or use of a surplus fund; this does not constitute a natural increase of the shares of stock until the declaration of a dividend. If a dividend is declared as such, whether in cash or certificates of indebtedness, such dividend represents no permanent interest in the corporate property or assets, but something to be paid or delivered to the shareholder as being the dividend upon his share. Such a dividend would fall within the description of a natural increase of the shareholder's stock, and would belong to the life-tenant. But, under the express declaration of the code, if new stock is issued upon shares of a stockholder, this represents a fixed interest in the corporate property and assets, not

a mere amount to be deducted from the assets and paid to the share-holder as a dividend, and falls within the description of an extraordinary accumulation of corpus, as used in the statute. This distinction is clearly recognized in *Millen* v. *Guerrard, 67 Ga.* 284 (44 Am. R. 720), where, as here, a will provided that the income of shares of stock would be paid to a named person for life, with remainder over. In that case the corporation declared *a dividend as such,* payable partly in debentures or certificates of indebtedness, and partly in a cash dividend. It was held that this constituted a dividend, and belonged to the life-tenant. But construing the meaning of the word "income," as used in the will, it was said: "What did the testatrix mean when she gave to George R. Millen for life the income of this stock? Most clearly she meant the dividends declared by the directors, for there is—there can be—no income from the stock of a railroad company, except the dividends declared thereon." Further, construing the section of the code now under consideration, the court said: "But really dividends are the ordinary, the natural, the only natural income or increase of this sort of property. . . . Nor are the words, 'such as an issue of new stock upon the shares of an incorporated or joint-stock company' [in conflict with what had previously been said]. They are a mere illustration of extraordinary accumulations. It, the issue of new stock, is not an ordinary increase; it is not a natural increase." The idea, which has been sometimes advanced, of making an apportionment between a life-tenant and a remainder-man according to the time when a fund was earned, rather than the time when a dividend was declared, has been repudiated by this court in *Mann* v. *Anderson,* 106 *Ga.* 818 (32 S. E. 870).

From what has been said it follows that in this case the new shares of stock which were issued upon the increase in the capital stock of the corporation form a part of the corpus of the trust estate and do not belong absolutely to the life-tenant, or, more strictly speaking, in this case to the beneficiary for life. The judge of the trial court, therefore, ruled correctly, and properly dismissed the petition on demurrer.

*Judgment affirmed. All the Justices concur.*