*Robert C. & Philip H. Alston,* for defendant.

## McHENRY v. McHENRY et al.

1. Under the allegations in the petition it appears that both of the defendants had such an interest in the litigation as to render them proper and necessary parties to the proceeding for equitable relief; and as substantial relief was prayed against one of the defendants residing in the county where the suit was brought, the court of that county had jurisdiction also of the codefendant.

2. The court below properly construed the instrument, which is the basis of the defendant's claim of right and interest in the property in controversy, to be a deed.

3. Under the facts of the case the life-tenants were estopped from denying that the instrument referred to was effective to convey the interest sought to be set up and established.

4. The other grounds of the demurrer were properly overruled.

5. " The natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the corpus — such as issue of new stock upon the share of an incorporated or joint-stock company — attaches to the corpus and goes with it to the remainderman." Civil Code, § 3667. In applying this statute to the evidence in the case it is held that what is known as the Massachusetts rule upon this subject prevails in this State; and while the trial judge, to whom the entire case was referred upon the trial without the intervention of a jury, sought to apply this rule, he erred in the material ruling of holding that a decree in a case in the Supreme Court of New York, to which the present plaintiffs were not parties, was a final determination of the character of numerous items in the statement of the property constituting the estate in which the plaintiffs here claim a remainder interest. The character of the items referred to should have been determined by the trial judge under the law and the evidence in the case, and the court erred in holding that the decision of the Supreme Court of New York was a conclusive adjudication as to the items making up the account, as the plaintiffs in the instant case were not parties

to that case; and, moreover, it does not appear from this record that the decree or judgment referred to as conclusive was introduced in evidence, and therefore properly before the court for consideration.

6. As the case, under the foregoing ruling, is remanded for a new trial, in case the evidence upon the next trial fails to show that Mrs. W. S. McHenry was appointed administratrix of W. S. McHenry, then she can not be proceeded against as the administratrix of her deceased husband, and the suit can only proceed against her upon the other allegations of her being the widow and the sole heir of W. S. McHenry, together with the allegations of her having taken charge of the property.

No. 2200. SEPTEMBER 26, 1921. REHEARING DENIED OCTOBER 1, 1921.

Equitable petition. Before Judge Park. Morgan superior court. July 6, 1920.

The plaintiffs, Zoe Harriotte McHenry and Marion Louise Hickey (formerly McHenry), who are the only children of John G. McHenry, the defendants in error in this court, brought a petition against John G. McHenry, of Morgan County, and Mrs. W. S. McHenry, of Floyd County, this State. By amendment John G. McHenry was made a party defendant both in his individual capacity and as the surviving administrator of the estate of Mrs. Marion McHenry Bozeman, and Mrs. W. S. McHenry was made a party defendant both in her individual capacity and as the personal representative of the estate of W. S. McHenry. Petitioners sought to have their rights as remaindermen in certain stock ascertained and declared. The character of this stock and the source and origin of plaintiffs' claim of title are also set forth in the petition. Plaintiffs sought injunctive relief to restrain the defendants from selling, transferring, or disposing in any manner of the stock described in the petition, or altering its status. In an amendment the plaintiffs further prayed that the rights of petitioners be ascertained and declared in the assets received by W. S. McHenry and J. G. McHenry from the estate of Marion McHenry Bozeman and from the committee of her property, the New York Trust Company, and in certain other property involved in the transaction. There was a prayer for injunction and receiver, and also a prayer for general relief. It is alleged in the petition, that John G. McHenry is the surviving administrator of the estate of Mrs. Marion Bozeman, deceased; that he and W. S. McHenry, the husband of Mrs. W. S. McHenry, were appointed and qualified as such administrators in 1918; that W. S. McHenry died intestate thereafter, in April, 1919,

without descendants, leaving the defendant, Mrs. W. S. McHenry, his sole heir at law; that Mrs. McHenry as such widow and sole heir at law had taken possession of all the estate of W. S. McHenry without administration; that Mrs. Marion Bozeman, who before her marriage was Marion McHenry, the sister of John G. and W. S. McHenry, in the year 1886 obtained, from the grandmother of the three, certain shares of stock in a corporation of the State of Alabama, then known as Elyton Land Company, the same owning the lands on which the City of Birmingham was afterwards largely built; that "dissatisfaction existing in the family thereabout, the same was adjusted and settled by an agreement respecting the stock, which was embodied in a certain deed of conveyance of said stock, whereby the rights therein both of their grandmother, Mrs. Eliza Stokes, and said Marion McHenry, John G. and W. S. McHenry, and their children were fixed and declared." This deed reads as follows:

"Georgia, Morgan County. Know all men by these presents, that I, Marion McHenry, of said county and State, for and in consideration of the natural love and affection I have for my brothers, William S. McHenry and John G. McHenry Jr., both of the county and State aforesaid, do hereby give, grant, and convey to them in severalty, and not as joint tenants, twelve and a half shares of the stock of Elyton Land Company of the State of Alabama, now standing in my name on the stock of said company, the same having been given and transferred to me by my grandmother, Eliza Stokes, of said county of Morgan and State of Georgia, with the understanding that one third part of all the dividends declared on said stock should be paid to the said Eliza Stokes as long as she may live, and no longer. And I hereby declare that in making this conveyance, the right of said Eliza Stokes to receive the one third of said dividends during her life is secured and to be respected; and should I die before my said grandmother, her right to one third of the dividends on said stock shall not be impaired. I convey hereby to each of my said brothers, William S. and John G. Jr., six and one fourth shares of the stock of said company, provided I die without leaving a child or children living at my death to receive one third part of the said six and one fourth shares so given, as to reduce each brother's part to four and a fraction shares, and the other equal part to the amount last

mentioned to become the property of whomsoever by law would be entitled as my heir or heirs in fee. But should I die leaving no such child or children living, who would be entitled to inherit the said one-third part of said twelve and a half shares of said stock, then the whole of said stock or shares is hereby conveyed in equal part to my said brothers separately for life, and to such child or children as he may leave living at his death to take his share in remainder in fee simple. Should either of my said brothers die leaving no child or children at his death to take his part of said shares in remainder, then the survivor of my said brothers to take the parts of both, whatever these amount to, with remainder over to such child or children as the survivor may have living at his death, in fee. But in making this conveyance it is agreed by the said Marion McHenry and her said two brothers that she hereby reserves to herself the full and absolute right to receive, use, and appropriate all dividends that may be declared during her life upon the twelve and a half shares of said stock, in the same manner as she has heretofore done, that is, allowing one third of said dividends to be paid to the said Eliza Stokes and the said Marion receiving two thirds so long as her said grandmother may live, and afterwards the entire dividends to the exclusion of all persons.

" In witness whereof, after making the erasures in line one on the second page, and in the interlineation on said page in lines eight and thirteen, I have hereunto set my hand and seal this 11 day of December, 1886.

Marion McHenry (Seal) "

" Executed in the presence of

" F. C. Foster, Joshua Hill,

" Thos. B. Baldwin, Ordinary, Morgan Co., Ga.

" Recorded Dec. 11, 1886. C. W. Baldwin, Clerk."

The original deed, it is alleged, went into the hands of W. S. McHenry; and plaintiffs pray that the said McHenry be required to produce the same in court at the trial of the case. Plaintiffs contend that by the terms of this deed, after the death of Mrs. Eliza Stokes, which occurred in the year 1888, Mrs. Marion Bozeman was to have the dividends from the stock during her life, and in the event she died without children, as she did on the 27th day of September, 1917, the stock was to pass to John G. and W.

S. McHenry for their lives; and should either die leaving no child or children, then the survivor was to take the whole for life, with remainder over to such child or children in fee as such survivor might have living at his death; and they further contend, that, John G. McHenry having survived his brother W. S. McHenry, the latter having died without leaving child or children, they, the petitioners, as the children of the said John G., are the presumptive remaindermen of said stock. The petitioners further show, by the allegations of the petition as amended, that in March, 1888, the Elyton Land Co. divided among its stockholders, including said Mrs. Bozeman, certain stock which it owned and held, and by virtue of said division transferred to Mrs. Bozeman fourteen and one half shares of stock of the Birmingham Trust & Savings Company, a corporation of Alabama, hereinafter referred to as the Birmingham Trust Co. This stock remained in the control and possession of Mrs. Bozeman till her death, and she received the dividends thereof. She became insane about the year 1895, and the New York Trust Company became her guardian or committee of her property, and later sold the one half share for her benefit. The remaining 14 shares are still on hand, and have been issued in the names of John G. and W. S. McHenry. The Elyton Land Company, prior to March, 1888, owned $200,000 of the capital stock of the Birmingham Trust Company, having acquired the same as an original subscriber to the stock; and in March, 1888, the Elyton Land Co., wishing to make a distribution of its assets among its stockholders, distributed to each of them one share of the capital stock in the Birmingham Trust Co. for each share of stock held by the subscriber in the Elyton Land Co., and Mrs. Bozeman received as her portion of the distribution of the assets of the Elyton Land Co. the 14½ shares of the capital stock of the Birmingham Trust Co.; and it is alleged that said distribution by the Elyton Land Co. was a division of the corpus of the estate of said company among the shareholders. It is further alleged that by successive reorganizations substitution for the original stock in the Elyton Land Co. has been made by stock in what is now called the Birmingham Realty Company, 137 shares having been issued to Mrs. Bozeman therein as representing her interest in the company reorganized. Said 137 shares have been likewise in her

possession or that of her guardian for her till her death, and she received the dividends therefrom. Since her death the stock has been transferred into the names of John G. and W. S. McHenry. The Elyton Land Co. made a distribution of its assets in the year 1887 or 1888, by issuing to its stockholders six-percent. bonds, said company owning as a part of its assets a large amount of purchase-money notes representing the sale of real estate owned by said company, and said bonds were secured by bonds issued against the purchase-money notes referred to. When said bonds became due the company defaulted in the payment of the same about the year 1895, and in order to meet said payment "the Elyton Land Co. was reorganized into the Elyton Company, said Elyton Company receiving all the assets of the Elyton [Land] Co.;" and said Elyton Company issued ten shares of its own stock for every one share of the Elyton Land Co. to each stockholder in the last-named company, and substituted its own bonds at five per cent. in place of and to retire the bonds of the Elyton Land Co. The Elyton Company defaulted in the payment of its bonds that were issued in substitution of the Elyton Land Company, and said Elyton Company reorganized into the Birmingham Realty Company, a corporation, said Birmingham Realty Company taking over the assets of the Elyton Company and issuing to the stockholders of the Elyton Company its own stock and bonds in substitution of the stock and bonds held by the stockholders in the Elyton Company. Mrs. Bozeman received, in substitution for the stocks and bonds held in the Elyton Company, one hundred and thirty-seven shares of common stock of the par value of $100, seventy-eight shares of preferred stock of the par value of $100, and $7,000 of five-per-cent. bonds of the Birmingham Realty Company. This last reorganization occurred on February 8, 1900. It is also contended, that the 14 shares of stock in the Birmingham Trust Co. and 137 shares of stock in the Birmingham Realty Co. represent the corpus of the stock of the Elyton Land Company mentioned in said deed of 1886, set forth above, and are in equity impressed with the same limitations and uses, and are the property of petitioners in remainder as provided in said deed; that the estate of Mrs. Marion Bozeman is indebted for and liable for petitioners' interest in the half share of the

former stock which was sold as aforesaid, said half share being of the present value of $125; that on October 17, 1908, the New York Trust Company, the duly authorized and acting committee of the property of Marion McHenry Bozeman, sold the 78 shares of preferred stock in the Birmingham Realty Company hereinbefore referred to, and received therefor the sum of $7,800, and likewise, on August 15, 1904, sold the bonds of said Birmingham Realty Company above mentioned for the sum of $7,000; that said New York Trust Co. reinvested the money derived from the stocks and bonds in first mortgages, loan certificates, and other valuable securities, holding and treating the same as the principal of the estate of said Mrs. Bozeman and turning over to the committee of the property for the support of said Mrs. Bozeman the income therefrom; that after her death these securities, or the money derived therefrom, were turned over to the duly appointed administrators of the estate of Mrs. Bozeman, to wit, W. S. and John G. McHenry; that the funds so received by them were in law and in fact not the estate of Mrs. Bozeman, but were controlled by and subject to the limitations of the deed referred to and set forth above; that W. S. and J. G. McHenry, in absolute disregard of the limitations imposed upon said securities, undertook to divide the same among themselves, and after the death of W. S. McHenry his widow, Mrs. W. S. McHenry, also disregarded petitioners' rights in said property, and J. G. McHenry and Mrs. W. S. McHenry have now possession and control of said property and are undertaking to hold the same in utter disregard of petitioners' remainder interest thereunder as created by the deed referred to. Petitioners show that it is the duty of J. G. and Mrs. McHenry to account to them for said sums as remaindermen, and they are liable therefor both in their individual capacities and as administrator and administratrix, respectively, of the estates of Mrs. Marion McHenry Bozeman and W. S. McHenry; that the Elyton Land Co. was the sole owner of the entire capital stock of the Birmingham Water Co., and the Highland Avenue and Belt Railroad, of Birmingham, Ala.; that on or about the year 1887 or 1888, and subsequently to 1886, said Elyton Land Co. again made distribution of some of its assets, by turning over to its stockholders all its capital stock

in said companies; that Marion McHenry Bozeman received as her distributive share 36 and a fraction shares of the capital stock of the Birmingham Water Co. and 76 and a fraction shares of the capital stock in the railroad company referred to. Said shares of stock were held by the New York Trust Co., as committee of the property of Mrs. Bozeman until "the —— day of October, 189—," at which time the same was sold, the Water Company's stock bringing something over $3,000, and the railroad stock bringing between $300 and $400. Said stock was treated by said committee as corpus of the estate of Mrs. Bozeman, the income thereof being used for her support and maintenance; the proceeds from the sale thereof were invested by said committee of the property, said New York Trust Co., in other securities, such as stock, bonds, or loan certificates, the same being held in the place of the original stock, and after the death of Mrs. Bozeman they were turned over to J. G. and W. S. McHenry as administrators of the estate of Mrs. Bozeman. Said substituted securities, or their equivalent in cash, are now in the possession, custody, and control of the defendants, they having divided the same among themselves, and claiming title thereto in disregard of petitioners' rights and in disregard of the limitations placed thereon in the deed set forth above. Petitioners attach to their petition a copy of the securities at the time of the death of Mrs. Bozeman turned over to the said administrators. It is also alleged that the Birmingham Realty Company, the successor of the Elyton Land Co. and the Elyton Co., distributed, between November 3, 1908, and May 20, 1918, certain "liquidation dividends" amounting to a total of $3,562, which the petitioners allege was a part of the corpus and which went into the hands of the committee of the property of Mrs. Bozeman, who treated said funds as a corpus of her estate and not as income, and turned it over, upon the death of Mrs. Bozeman, to the defendants. It is further alleged that a part of the assets received from the estate of Mrs. Bozeman by W. S. and John G. McHenry, a portion of which had been divided between them, had gone into the hands of Mrs. W. S. McHenry; and that this property had not been kept separate by her, but had been mingled with other property that she had received as sole heir at law and as the sole representative of her deceased husband.

Mrs. McHenry demurred to this petition, both generally and specially upon numerous grounds. It is unnecessary to set forth in detail the grounds of the demurrer. The rulings made in the opinion substantially cover them. Mrs. McHenry also filed her plea and answer, admitting certain of the facts alleged in the petition, and denying others. The demurrers were overruled by the court, to which ruling the defendant excepted. Evidence was submitted upon the issues made by the pleadings, and the case was submitted to the court upon the law and facts without the intervention of a jury. After holding the case for consideration, the court rendered a judgment, which was in favor of the plaintiffs for most of the material issues in the case, and the defendant, Mrs. W. S. McHenry, excepted.

*Maddox & Doyal* and *R. J. Bacon,* for plaintiff in error.

*Spalding, MacDougald & Sibley,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The first ground of the demurrer filed by Mrs. W. S. McHenry raises the question as to whether the superior court of Morgan County had jurisdiction of the defendant, the demurrant contending that she was improperly sued in that county. This ground of the demurrer was properly overruled. The plaintiffs are asserting a common right against both defendants, that is, the right of the remaindermen to have their interest declared in the described property and to have the property protected against waste. Section 5417 of the Civil Code provides that "Generally all persons interested in the litigation should be parties to proceedings for equitable relief;" and § 5419 declares that "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." While the case of *Conley* v. *Buck*, 100 *Ga.* 187 (28 S. E. 97), is itself based upon a different state of facts from those involved here, the discussion in that case of the question of multifariousness and the authorities there cited illustrate and justify the ruling which we have made, and render a discussion and citation of authorities unnecessary. See also the case of *Blaisdell* v. *Bohr,* 68 *Ga.* 56. As substantial relief was prayed against one of the defendants residing in the county where the suit was brought, the court of that county had jurisdiction also of the codefendant.

2. The ground of the demurrer raising the question as to the character of the written document which is the basis of the suit, the demurrant contending that it was testamentary in character and not shown to have been probated as required by law, was also properly overruled. The instrument in question employs the language of a deed. It is recited that the grantor doth by the instrument "give, grant, and convey" to the named grantees certain property; and it is also declared that "in making this conveyance it is agreed by the said Marion McHenry [the grantor] and her said two brothers [the grantees] that she hereby reserves to herself the full and absolute right to use, receive, and appropriate all dividends that may be declared during her life upon the 12½ shares of said stock [the property conveyed] in the same manner as she has heretofore done." Elaborate argument is entirely unnecessary to show that the very material provision, the reservation of the right to receive and use the dividends during the life of the grantor, is entirely inconsistent with the idea that the instrument is testamentary in character. Other features of the instrument might also be pointed out which bear out the conclusion here reached, but we think that unnecessary.

3. The grantees in this deed are estopped from denying, as against the remaindermen, that the instrument was operative as a deed, on the ground that it conveyed a mere contingency and there is no provision as to the disposition of the property in case of the failure of the contingency contemplated. The deed itself was found among the papers, as the demurrant admits, of her husband, of whom she is the sole heir; and there are allegations to show that he, at the time of his death, was in possession of at least a part of the property conveyed by this deed; that there was acceptance by the life-tenants of the interest in the property conveyed by the deed.

4. The general demurrer was properly overruled. The allegations of the petition show an interest in the remaindermen in at least a part of the property in controversy, which entitles them to the protection sought; and the allegations of the petition as amended are not open to the exception made in the special demurrers, that they are vague, uncertain, and insufficient. The character of the property, the way in which it was

changed by substitution for other shares of stock than those which were originally held, and the reorganizations of companies which issued the shares of stock, the issuance of bonds, etc., and all the other material incidents in the history of the property sought to be impressed with the trust are set forth with sufficient clearness and exactness to enable the parties defendant and the court to clearly understand the character of the property involved and the rights which the petitioners in the case insist that they have in the property. It may be that there are certain allegations, wherein certain claims are made in regard to the property, that are mere conclusions of the pleader and not statements of facts, but they are not of such materiality or weight as to require a reversal of the judgment because of the court's refusal to strike those conclusions; and in most cases where these conclusions are stated as a part of the pleadings they aid in making clearer the plaintiffs' contentions as to the rights which they pray the court to have ascertained and settled.

5. The property which was conveyed by the deed which we have heretofore considered was, as we have seen, 12½ shares of the stock of the Elyton Land Co., standing at the time of the execution of the deed in the name of the grantor, Mrs. Bozeman, on the books of the company. Of this property, the shares of stock, W. S. and John G. McHenry (Mrs. Bozeman having died in 1917, without leaving a child) became the life-tenants, and John G. became the sole life-tenant upon the death of his brother, W. S. McHenry, leaving no child. The rights of the life-tenant in the property are fixed and defined by our statute, which declares: "The natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the corpus — such as issue of new stock upon the share of an incorporated or joint-stock company — attaches to the corpus and goes with it to the remainderman." Civil Code, § 3667. Had the property conveyed by the deed remained in its original form, many of the questions presented in this record could not have arisen; but it did not. The Elyton Land Co. was reorganized; stock in other companies was substituted wholly or in part for the original shares of stock. Divisions and distributions of funds arising from the assets of the corporation were made. Some of these distributions were unquestionably dividends paid

over to and enjoyed by the grantor in the deed under the rights preserved in that instrument. Other distributions were made about which there is a contest here as to whether they were really dividends or a distribution of the corpus of the estate of the corporation. The correct decision of these questions depends upon an application of the law to the facts in the case. The law constituting the rule under which the question as to whether certain portions of the property in controversy should be deemed corpus or income has been declared in this State by a decision of this court. In the case of *Jackson* v. *Maddox,* 136 *Ga.* 31 (70 S. E. 865, Ann. Cas. 1912B, 1216), Chief Justice Fish, speaking for the court, said: "There are two lines of authority on the subject of whether shares so issued become part of the corpus, or whether they rank as dividends and belong to the life-tenant. One of these lines of authority will be found illustrated by the decisions of the Supreme Court of the United States, in Gibbons v. Mahon, 136 U. S. 549 (10 Sup. Ct. 1057, 34 L. ed. 525) ; and of the Supreme Court of Massachusetts in Minot v. Paine, 99 Mass. 101 (96 Am. D. 705). The other line may be represented by Earp's Appeal, 28 Pa. 368; Pritchard v. Nashville Trust Co., 96 Tenn. 472 (36 S. W. 1064, 33 L. R. A. 856) ; Hite v. Hite, 93 Ky. 257 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. R. 189). When the law of this State was codified, in view of the older English cases and of such decisions as had then been made in America, one of these lines of authority had to be selected as containing the correct rule. The codifiers in substance selected the first of the two rules mentioned above. As formulated in the present Code (1910), § 3667, the rule is thus stated: 'The natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the corpus — such as an issue of new stock upon the shares of an incorporated or joint-stock company — attaches to the corpus and goes with it to the remainderman.'" In brief, it is here declared that our State by the statute quoted above has adopted what is known as the Massachusetts rule upon the subject under consideration. What is known as the Massachusetts rule is thus stated in 14 Corpus Juris, 831, § 1260: "The Massachusetts courts have adopted the rule that whether a dividend is to be regarded as income, and as such the property of the life-tenant, or as capital be-

longing to the person entitled to the remainder interest in the
stock, is to be determined by the substance and intent of the
action of the corporation in declaring the dividend; in other
words, if the action of the corporation manifests. an intention,
so far as it is concerned, no longer to treat its surplus profits
as income, but, to the extent of the dividend, as a part of its
permanent capital, the dividend, as between the life-tenant and
the remainderman, is to be considered as a distribution of cap-
ital, and where the effect and intent of the declaration is a
permanent separation of its surplus profits, to the amount of
the dividend, from the capital used in its business, it is to be con-
sidered, as between such term holders, as income. The view
taken by the Massachusetts courts has been followed in a num-
ber of jurisdictions; and in Georgia the substance of the rule
has been enacted by statute. It follows that where this rule
obtains, regardless of the time the profits out of which they
are made accumulate or were earned, all stock dividends are to
be considered as capital belonging to the remainderman, and all
cash dividends are to be regarded as income belonging to the
holder of the life term. However, if the action of the corpora-
tion in declaring a dividend amounts in substance to a declara-
tion of a stock dividend, its character as a distribution of cap-
ital is not affected by the fact that the dividend is in form a
cash dividend. But the fact that an increase of the capital stock
of a corporation is voted the same day as a cash dividend, to
which increase the stockholder is entitled to subscribe, does not
impress the transaction with the character of a stock dividend,
if the stockholder is entitled to receive his dividend and to use
it as he sees fit, and is at liberty to dispose of his rights to sub-
scribe for the new stock. And a dividend made payable in stock
or in cash at the option of the stockholder is a cash dividend."
And we think that the court in rendering the judgment com-
plained of here was right in applying the rule to the facts in
this case in determining the rights of the parties. Under that
rule the substitution of other stock and the distribution of such
substituted stock to the holders of stock in the Elyton Land
Co. in designated proportions brought the substituted stock with-
in the rule here laid down and made it a part of the corpus of
the estate, and it became impressed with the trust in favor of

the remainderman.  Such in character were the shares of stock
of the Birmingham Trust & Savings Co., which the Elyton Land Co.
held and owned and in March, 1888, divided among its stock-
holders; such also were the 137 shares of the common stock
of the Birmingham Realty Co. and the 78 shares of the preferred
stock of that company, which through successive reorganizations
were substituted for the original stock of the Elyton Land Co.
It is also applicable to the distribution of the capital stock of
the Highland Ave. & Belt Railroad Co. and the mortgage bonds
of the Birmingham Waterworks Co., which were distributed in
the proportions designated in the resolution adopted May 5,
1887.  In this resolution it is provided that the stock last re-
ferred to and the bonds should be distributed as dividends.  The
recital that it was distributed as dividends will not be controlling
upon the court.  The court will look to the substance of it.  It
was evidently a division of a part of the corpus of the corpora-
tion, and falls within the operation of the rule which we have
pointed out.  The same is true of the dividend declared and called
a liquidation dividend.  And there are other items that clearly
fall within the operation of this rule, which we will not now under-
take to segregate and point out.  We have pointed out merely
those which are incontrovertibly a part of the corpus, to illustrate
the rule which we have laid down, or, rather, which we have
restated, as it has already been clearly laid down.  All of the
items in the accounting and the question as to whether each
falls under the head of corpus or capital, or whether it is to be
considered as dividends and income, can be taken up and dealt
with by the court below on its next hearing; as we feel compelled
to reverse the judgment of the court below because of its error
in finding and holding that the " part of the property described
in the pleadings which constitutes corpus and what part con-
stitutes income is really settled in the suit between the New
York Trust Co., as plaintiff, and Wm. S. and John G. McHenry,
individually and as administrators of the estate of Mrs. Boze-
man."  No decree of that court is found in this record; and if
it were there, it would not be binding in this case.  The plaintiffs
in this case were not parties to that suit.  There are many items
in the return made by the committee of the property of Mrs.
Bozeman.  Some of these are designated as principal and some

as income. Whether all of these items so designated as principal are a part of the corpus of the estate should have been adjudged by the trial court under the evidence submitted, and the proceeding in the New York Supreme Court should not have been considered as finally determining this question. As to certain of the items the finding is incontrovertibly right, as we have indicated above. But as to certain other items, consisting of bonds and cash, the question should have been determined as one of fact by the court below, and this court can not undertake to decide it. And, as we have said above, we will not segregate those items about which there is no controversy, so as to uphold the judgment in part and reverse it as to the remainder, but the entire account between the parties should be considered as a whole, and a judgment rendered thereon in accordance with the rules of law which we have stated and the facts.

6. As the judgment is reversed upon another ground, in the event the evidence upon the next trial fails to show that Mrs. W. S. McHenry was appointed administratrix of W. S. McHenry, then she can not be proceeded against as the administratrix of her deceased husband, and the suit can only proceed against her upon the other allegations of her being the widow and the sole heir of W. S. McHenry, together with the allegations of her having taken charge of the property.

*Judgment reversed. All the Justices concur.*