## WOOD *v.* DAVIS.

No. 6845. MAY 16, 1929.

*S. B. Lippitt,* for plaintiff.

*Potlle & Hofmayer* and *Howell Cobb,* for defendant.

HILL, J. (After stating the foregoing facts.) The question to be decided turns mainly upon a construction of the will, in order to determine whether the money derived from the sale of the property devised, over and above the par value of the property invested, goes to the life-tenant or to the remaindermen. The Civil Code (1910), § 3667 provides: "The natural increase of the property belongs to the tenant for life. Any extraordinary accumulation of the corpus, such as issue of new stock upon a share of an incorporated or joint stock company, attaches to the corpus and goes with it to the remaindermen." In *Jackson* v. *Maddox,*

136 *Ga.* 31, 33 (70 S. E. 865), it was said: "What is meant by 'the natural increase of the property?' As applied to corporate stock it means dividends. Clearly it can not be the appreciation in value of the corpus of the property. If a lot of land should be left to A for life, with remainder to B, and at the time of the devise it was of the value of $1,000, but by appreciation in value it came to be worth $5000, it seems very clear that it was not the intention of the lawmakers to say that the life-tenant could claim $4000 of this increased valuation as belonging to her, and leave for the remaindermen only $1000 as the original value. In that event the rents, or income, derived from the property, or its use, would belong to the life-tenant, but any increase in value of the corpus would belong to the remaindermen. The word 'increase' may at first sight be thought to indicate any increase of value of the corpus, but the illustration given will show that such is not the case. That word is used in a number of sections of the code as indicating the issue of animals, or that which issues from the principal." It is insisted by the plaintiff that the decision cited is not in point, as in that case the testator devised a certain number of shares of the capital stock of a corporation to his daughter, she to receive the income therefrom for and during her natural life, and that she was not granted the profits, but simply the income, etc. Even if the facts in the *Jackson* case and the instant case are not identical, we are of the opinion that the reasoning of Chief Justice Fish, as quoted above, bears upon the question at issue in the instant case. It is further insisted that the testator meant, in the foregoing item of his will, that the life-tenant should have what he claims as a "profit" made on the investment in the liberty bonds which were purchased with money arising from the sale of the real estate. But we are of the opinion that this contention is not only against the weight of authority in other jurisdictions, but is without authority to support it.

"In ordinary parlance, 'profit' is the pecuniary advantage resulting from dealing and trafficking in property, but, as used in a will devising the income and profits of a certain sum which shall be invested in good, approved securities, will not be held to include the increased value of the corpus. In Re Procter, 33 N. Y. Supp. 196, 197, 85 Hun, 572; In Re Biden's Estate, 33 N. Y. Supp. 196, 197; Linsly *v.* Bogert, 33 N. Y. Supp. 975, 980, 87 Hun, 137.

Mere advance in value in no sense constitutes the 'profit' specified in the revenue law as profits of the owner for the year in which the sale of the property was made. Such advance constitutes, and can be treated, merely as increase of capital." Gray v. Darlington, 82 U. S. 63, 65 (21 L. ed. 45), citing In re Graham's Estate, 198 Pa. 216 (47 Atl. 1108, 1110). In Boardman v. Mansfield, 79 Conn. 634 (66 Atl. 169, 12 L. R. A. (N. S.), 793, 118 Am. St. R. 178), it was held: "The market value of the fund upon the termination of the life-estate was $127,683.07 in excess of its market value at the time of its creation. The major claim presented by the executors, which is comprehensive of all others, is for this amount. The contention thus made, it will be observed, is that the remainder interest is only entitled to have the fund kept intact to the extent of its original market value, and that the life-tenant is entitled, not only to have all else which may have flowed from or accrued to it, but also to have both the existence and amount of its accretions determined upon the basis of market value, and that, too, whether or not there have been changes in its investments. It is manifest that this claim is in direct contradiction of the general principles governing the rights of life-tenants and remaindermen in and to trust funds, which have been repeatedly affirmed and reaffirmed by this court, and that it can not be supported unless there is something in the terms of the will creating the trust which takes it out of the operation of those accepted principles." There are numerous authorities which hold to the effect that where a trust deed or will gives to a person the income and profits from property, any increase in the value of the bonds is a part of the corpus, and that the life-tenant is entitled only to the interest on the bonds. Re Guerry, 103 N. Y. 445 (9 N. E. 235); Stewart v. Phelps, 71 App. Div. 91 (75 N. Y. Supp. 526), affirmed in 173 N. Y. 621 (66 N. E. 1117); Townsend v. U. S. Trust Co., 3 Redf. 220.

It has been held that stock dividends are part of the corpus, and not income therefrom or thereon. McDonald v. Maxwell, 274 U. S. 91, 97 (47 Sup. Ct. 497, 71 L. ed. 942); Gibbons v. Mahon, 136 U. S. 549 (10 Sup. Ct. 1057, 34 L. ed. 525); Brown v. Wisconsin Syndicate, 19 Fed. (2d) 198; Hayes v. St. Louis Union Trust Co., 317 Mo. 1028 (298 S. W. 91); Buder v. Franz, 27 Fed. (2d) 101 (7, 8). While the present case does not involve stock

dividends, yet we are of the opinion that the principle ruled in the foregoing cases is applicable to the case at bar, where the enhancement of the stock is not by stock dividends, but is the market value of the stock, which, it is generally known, fluctuates from day to day. In *McHenry* v. *McHenry, 152 Ga. 105 (5), 115 (108 S. E. 522)*, a case decided by our own court, this principle was recognized in the following ruling: "The natural increase of the property belongs to the tenant for life. An extraordinary accumulation of the corpus—such as an issue of new stock upon the share of an incorporated or joint stock company—attaches to the corpus and goes with it to the remaindermen." It was further held that "What is known as the Massachusetts rule upon this subject prevails in this State." See the discussion of this question by Mr. Presiding Justice Beck. In 14 C. J. 831, § 1260, it is stated that where this rule obtains, regardless of the time the profits out of which they are made accumulated or were earned, all stock dividends are to be considered as capital belonging to the remaindermen, and all cash dividends are to be regarded as income belonging to the holder of the life term. Of course, after all, the intention of the testator must control; and we are of the opinion that the testator by the use of the words, "use, income, and profits," meant that the life-tenant was entitled only to whatever income the property produced. One illustration, we think, will suffice to bear out this contention: If the executors had never sold the land, and on account of conditions the value of the land had greatly enhanced, the life-tenant would clearly not have a right to demand of the executors the amount of the enhancement in value of the land. And on the other hand, if, on account of economic conditions, the land had decreased in value, the remaindermen could not require the life-tenant, or the executors, to pay the amount of the decrease in value of the land. So we are of the opinion that, because the market value of the liberty bonds at the time they were purchased was actually more than the purchase-price, the life-tenant would not be entitled to the difference between the market value and the value actually paid for the bonds. A construction of the will as contended for by the plaintiff would bring about endless confusion and litigation between the life-tenant and remaindermen, and in our opinion such a construction was never contemplated by the testator when he executed

510

the will. We are of the opinion that the court did not err in dismissing the petition on demurrer.

*Judgment affirmed. All the Justices concur.*