*64
 
 Marshall, C. J.
 

 This was originally an application for the direction and judgment of the court as to the proper administration of the trust imposed by the will of Mrs. Heady, and for an interpretation of the trust provisions respecting 204 shares of so-called dividend stock which came into the possession of the trustee after the death of testatrix.
 

 The rights of the respective claimants to that property are controlled and must be determined by the intent of the testatrix. Being the owner will full power of disposition she gave the “income” to Mrs. Lamb during her lifetime, reserving the corpus to the university endowment. The case therefore turns upon the meaning of income, and a determination of whether the 204 shares are income or a part of the corpus of the estate.
 

 Ordinarily no difficulty would be experienced in defining the word “income.” If the corpus was a piece of real estate under a perpetual lease, with bond to secure the rent, and all taxes, expenses, repairs, improvements, and upkeep paid as a part of the rent, the cash rental would be the income, which would be payable in its entirety to the life tenant. If not leased, and possession given to a life tenant, such life tenant would be liable, not only for expenses and repairs but also for such improvements as would be necessary to prevent waste, under penalty of damages and possible forfeiture. In such event income has a more complex and doubtful significance, but even so it remains measurably under the control, judgment, and discretion of the life tenant. If the property consists of a mercantile business, or a manufac
 
 *65
 
 turing concern, it requires elaborate bookkeeping and accounting with allowance for depreciation and reserves to ascertain tbe true income. If tbe property is common capital stock in a corporation, all the foregoing matters must be considered by the corporate officials in ascertaining its net profits, and when that point has been reached there still remains one all-important step to be taken before the income of the stockholder is known. The corporation, through its managing board of directors, must consider and decide the question of corporate policy, whether the profits shall be distributed as dividends or carried to surplus account, this matter being by concurrence of all authority within the discretion of the directors, within proper limitations of good faith and consideration for the best interests of all parties concerned. As to what facts and circumstances will justify a court of equity in granting relief against bad faith, or arbitrary or unjustifiable conduct on the part of the directors, we need not inquire, because the parties concede the good faith of the corporation in this case. It is sufficient to say that a court of equity will not fail to grant proper relief from an abuse of power. "While the directors are chosen by the stockholders, they become, when elected and properly organized as a board, the agent of the corporation. It is by such means that animate force is given to an inanimate thing. The individ-1 ual directors are in no sense the personal repre-' sentatives of the stockholders by whose suffrage | they hold office. However much they might be in-1 fluenced by the wisdom and wishes of the stockholders, it remains their duty to exercise their
 
 *66
 
 own judgment in all final corporate action. If the action of the board of directors does not express the will and wish of the owners of a majority of the shares of stock, the majority has its remedy by retiring the members who exercise a 'judgment contrary to the majority will, but this action can only be taken at the regular time for the election of directors. These are a few of the incontrovertible legal principles underlying this controversy which must guide us part way.
 

 The testatrix, when she executed her will, being the owner of common capital stock in the Richardson Company, which she continued to own to the date of her death, it will be presumed that she had all these legal principles in mind, and that they entered into the meaning and purpose of her will, the same as if expressed therein. It was her privilege to be very explicit and provide in detail what disposition should be made as between life tenant and remainderman of issues of stock charged against surplus earnings, and, having chosen to make disposition in general terms, without defining income or limiting its meaning within or expanding it beyond that which would depend upon the regular action of the board of directors, she will be presumed to have had in mind the lawful power and control of the corporation over the use and distribution of profits.
 

 The authorities are quite harmonious upon the proposition that the earnings and profits of a private corporation are the property of the corporation, free from all claims of stockholders, unless and until distributed as dividends. They are equally harmonious upon the doctrine that within the
 
 *67
 
 limitations of good faith, aforesaid, the directors may either treat the surplus as profits and distribute it, or transfer it to capital account. This per-manent transfer to capital account may be effected either by issuing additional stock certificates pro rata among stockholders or by amending the articles and increasing the face value .of the shares; or, in these modern days in cases of corporations with no par value stock, a simple bookkeeping transaction of charging the surplus account and crediting the stock account will complete the transaction. Pursuant to the power lodged in the corporation to determine its. own policy, it may retain the profits in surplus account to care for possible losses in future years; or it may accumulate them for betterments and business expansion. It may and should carefully consider, not only present business conditions, but also future prospects. Authorities are agreed that a court will not substitute its judgment in such matters for that of the directors. The same directors who have achieved a large measure of corporate success, resulting in unusual profits, will be presumed to have better judgment in matters of policy than any judicial tribunal, however aided by expert testimony.
 

 So many elements enter into questions of improvement and business expansion, and there are so many hazards in any manufacturing enterprise, unknown to those not charged with its responsibilities, and unforeseen by those who are so charged, that it is not strange that this testatrix, who was probably unlearned in the mysteries of economic production, and who owned less than 2 per cent, of the capital of this corporation, should have left the
 
 *68
 
 determination of income upon her stock to the sound discretion of the directors, with the further expectation that the directors would be guided and controlled by the law.
 

 After having carefully considered this will and the testimony contained in the record, we are able to find only one element which throws any
 
 light
 
 upon testamentary intent upon the subject of title to stock dividends. Under this residuary bequest the trustee was clothed with the power and charged with the duty to “invest and keep the same invested either in the form in which said property shall exist at the time of my decease or to sell the same or any part thereof and invest the proceeds thereof in such other property or securities as shall by him be deemed advisable, with full powers of re-sale and reinvestment in like manner at all times.”
 

 This was therefore a trust estate, which, by the terms of the will itself, was exempted from the statutory requirements pertaining to the investment of trust funds, and yet by a subsequent paragraph of the same clause “the principal of the trust estate” is specifically referred to and bequeathed to the remainderman, and it is noteworthy that it is not referred to as a balance, or residuum, or by other expression which might indicate that the testatrix only intended that the University should receive whatever remained after a season of speculation with the trust estate. It is clearly shown, on the other hand, that these stocks, like all stocks in manufacturing concerns, were highly speculative. Millions of profits were earned during one year, and profits were small the follow-
 
 *69
 
 in.g year, due to sudden depreciation of values. If a panic had occurred, the company might have had enormous losses.
 

 The action of the trustee in retaining the investment proved beneficial to both life tenant and remainderman, since the net result was a large gain, and cash dividends were paid which were much larger than the ordinary returns from trust funds invested under statutory limitations. The greater benefit from this policy on the part of the trustee accrued to the life tenant, and the greater risk was incurred by the remainderman. It would therefore be manifestly unfair and inequitable to give all the benefits of the speculative profits to the life tenant and impose all the risk of the principal of the fund upon the remainderman.
 

 The testamentary intent in this case, however, does not stand out in sufficient clearness and distinctness to permit this case to be decided without a determination of the question whether a distribution of stock charged to surplus account is a true dividend, and therefore to be classed as income. This question has been discussed in a very large number of cases in other jurisdictions throughout the states of the Union, in the federal courts and in the English courts, but, strange to say, it has never been authoritatively dealt with by this court.
 

 Counsel in the instant case have discussed the case of
 
 Wilberding, Admr.,
 
 v.
 
 Miller,
 
 90 Ohio St., 28, 106 N. E., 665, L. R. A., 1916A, 722, and it is claimed, on the one hand, that this question was involved in that case, and the principle there decided, and it is claimed, on the other hand, that the principle was not only not involved, but that the
 
 *70
 
 discussion was so confused and contradictory that the situation rather than clarified has been rendered more complex by that decision. That case was a review of the case of
 
 Miller
 
 v.
 
 Miller,
 
 decided by the circuit court of Cuyahoga county, December 2, 1912, and reported in 15 Ohio Cir. Ct. R. (N. 8.), 481. A careful examination of the statement of facts in the report of the circuit court decision, and also of that in the Supreme Court decision, shows that the question of stock dividends was not involved. In both courts the principle of stock dividends was discussed because of a certain analogy in principle which was thought to exist, and the syllabus in the circuit court decision even goes to the extent of making a declaration thereon. We, of course, have no means of knowing whether that syllabus was written by the court or by the editor who published the opinion. It is quite certain, however, that there is no syllabus in the Supreme Court decision upon the subject of stock dividends, and therefore no official declaration. All discussion of stock dividends in the opinion must be regarded as
 
 obiter,
 
 and a careful analysis of the opinion leads to contradictions upon the final question which must determine this case. In the opinion at page 54 we find the following language:
 

 “There should be no arbitrary, rigid rule which would prevent the court from looking into the facts and circumstances of each case to determine the rights of the parties according to justice and equity. ’ ’
 

 This language can only be reconciled with the other discussion in that opinion on the subject of stock dividends on the theory that it was meant that
 
 *71
 
 the court should prevent an abuse of power on the part of the directors in withholding cash dividends. On the other hand, a careful reading of that language in connection with its immediate context seems to indicate that the opinion meant that the court should in all cases of determination of respective rights of life tenants and remaindermen in stock dividends look to the facts and circumstances, and determine such rights according to justice and equity.
 

 This principle has been before the lower courts of Ohio twice since the determination of the
 
 Wilberding cense,
 
 to-wit,
 
 Ohio Savings Bank & Trust Co. et al., Exrs.,
 
 v.
 
 Clark,
 
 7 Ohio App., 6, and
 
 Worthington, Trustee,
 
 v.
 
 McAlpin,
 
 18 N. P., N. S., 436.
 

 In the former case' the
 
 Wilberding case
 
 was argued at length, as the briefs clearly indicate, and, although no mention is made of the
 
 Wilberding case
 
 in the court’s opinion, it is quite clear that that court reached a different conclusion from that reached by the Court of Appeals in the instant case, which difference was the basis of this cause being certified to this court.
 

 In
 
 Worthington
 
 v.
 
 McAlpin,
 
 Judge May, of the Hamilton county common pleas court, at page 441, particularly states that the opinion in the
 
 Wilberding case
 
 “did not mean to lay down any ‘arbitrary, rigid rule’ which would prevent the court looking into the facts and circumstances of each case to determine the rights of the parties according to justice and equity.”
 

 On the other hand, the
 
 Wilberding cense
 
 is the basis of the decision of the Court of Appeals in
 
 *72
 
 the instant ease, which court reached a contrary conclusion. It must be admitted, therefore, that the question is still an open one in Ohio. The decision of this question in other jurisdictions has resulted in conclusions widely differing from each other, which have been classified by law-writers into three different rules:
 

 First, the English rule declares that ordinary, regular, usual dividends, whether in cash or in stock, belong to the life tenant, and all extraordinary cash, stock, or property dividends belong to the remainderman. This rule was first declared in
 
 Bouch
 
 v.
 
 Sproule,
 
 L. R., 12 App. Cas., 385.
 

 Second, the Pennsylvania rule, sometimes called the American rule because it has been followed by the courts of the larger number of states, declares that the court may properly inquire into the time when and method of accumulation of the fund, and that all dividends, whether cash or stock, earned after the life estate arose, are income and belong to the life tenant. This rule was declared in
 
 Earp’s Appeal,
 
 28 Pa., 368. That early declaration has been reaffirmed and supplemented by many other decisions of the courts of that state, and has been followed by a large numerical majority of the courts of the other states of the Union.
 

 It would seem that under the English and Pennsylvania rules there must be an inquiry into the facts and circumstances, and an examination into the internal affairs of the corporation, and that there is no finality in the action of the board of directors of the corporation, and it would seem to be a corollary to such a proposition that stockholders have certain property rights in the undis
 
 *73
 
 tributed surplus of a corporation before any order of distribution is made by the directors.
 

 Tbe third rule, known as the Massachusetts rule, regards cash dividends, whether ordinary or extraordinary, as income, and regards stock dividends, so called, as capital, without regard to the period when the same were earned. It declares that cash dividends belong to the tenant for life, and that stock dividends belong to the estate in remainder. This rule involves no inquiry into the internal affairs of the corporation, unless there is an issue of abuse of power. This rule has found favor with the courts of other states of the Union, as may be seen by an examination of the following leading cases in the courts of various states:
 
 Humphrey
 
 v.
 
 Lang,
 
 169 N. C., 601, 86 S. E., 526, L. R. A., 1916B, 626;
 
 Harris
 
 v.
 
 Moses,
 
 117 Me., 391, 104 Atl., 703;
 
 Kaufman
 
 v.
 
 Charlottesville Woolen Mills,
 
 93 Va., 673, 25 S. E., 1003;
 
 Security Trust Co.
 
 v.
 
 Rammelsburg,
 
 82 W. Va., 701, 97 S. E., 122;
 
 In re Brown,
 
 14 R. I., 371, 51 Am. Rep., 397;
 
 De Koven
 
 v.
 
 Alsop,
 
 205 Ill., 309, 68 N. E., 930, 63 L. R. A., 587;
 
 Green, Trustee,
 
 v.
 
 Bissell,
 
 79 Conn., 547, 65 Atl., 1056, 8 L. R. A. (N. S.), 1011, 118 Am. St. Rep., 156, 9 Ann. Cas., 287. The same rule has been followed in the state of Georgia in
 
 Jackson
 
 v.
 
 Maddox,
 
 136 Ga., 31, 70 S. E., 865, Ann. Cas., 1912B, 1216. (In a codification of the laws of Georgia in 1910 the rule became established by statute.)
 

 It is claimed that the courts of Massachusetts have not at all times consistently adhered to their rule, but we think it will be found that the cases which are cited as departures are those relating,
 
 *74
 
 not to the respective rights of life tenants and remaindermen, but to a construction of statutes pertaining to the subject of income tax. The Massachusetts rule first found expression in
 
 Minot, Jr.,
 
 v.
 
 Paine,
 
 99 Mass., 101, 96 Am. Dec., 705. Its latest case is
 
 Tax Commissioner
 
 v.
 
 Putnam,
 
 227 Mass., 522, 116 N. E., 904, L. R. A., 1917F, 806, which was an income tax case, and therefore involved only the construction of a statute, but the court particularly disaffirmed any departure from the doctrine declared in
 
 Minot
 
 v.
 
 Pome,
 
 where the issue was between the life tenant and remainderman.
 

 It is impossible to reconcile the reasoning of the various jurisdictions in their respective discussions of these rules, and the reasonable limits of this opinion will not permit a discussion of the reasons why this court cannot follow the English and Pennsylvania rules, and we will therefore merely discuss as briefly as we may the Massachusetts rule, which we have decided to follow.
 

 The facts in the case of
 
 Minot
 
 v.
 
 Paine, supra,
 
 were practically the same as the facts in the instant case. That case was cited with approval and its rule followed by the Supreme Court of the United States in
 
 Gibbons
 
 v.
 
 Mahon,
 
 136 U. S., 549, 10 Sup. Ct., 1057, 34 L. Ed., 525, in which the facts were also almost exactly parallel to the facts in the instant case. Our views upon this question are so well expressed by Mr. Justice Gray in the latter case that we will quote liberally from his oninion. He says at page 557 of 136 U. S. (10 Sup. Ct., 1057 [1058], 34 L. Ed., 525):
 

 “The distinction between the title of a corporation, and the interest of its members or stockhold
 
 *75
 
 ers, in the property of the corporation, is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the property re maining, upon the termination or dissolution of the corporation, after payment of its debts.”
 

 Again, at page 558 of 136 U. S. (10 Sup. Ct., 1058):
 

 “Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.”
 

 Again, on the same page:
 

 “Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof.”
 

 Again, at page 559 of 136 U. S. (10 Sup. Ct., 1059 ):
 

 “A stock dividend really takes nothing from the property of the corporation, and adds nothing to
 
 *76
 
 the interests of the shareholders. Its property is .not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all-the corporate property; the aggregate interests therein of all the .shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones.”
 

 Practically every word of the somewhat lengthy opinion in that case is pertinent to our present inquiry, but we cannot quote the opinion in its entirety. It is significant that all members of that court who participated were unanimous in their concurrence.
 

 The question of the character of stock dividends was again before the Supreme Court of the United States in the case of
 
 Towne
 
 v.
 
 Eisner, Collector of Internal Revenue,
 
 245 U. S. 418, 38 Sup. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254, which case involved construction of the income tax laws, where the respective rights of life tenant and remainderman did not appear. In that case a short opinion was rendered without any dissent, and the principles of
 
 Gibbons
 
 v.
 
 Mahon
 
 were reaffirmed and applied. Later the question of the character of stock dividends was again before the court in
 
 Eisner, Collector of Internal Revenue,
 
 v.
 
 Macomber,
 
 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. In the meantime the federal in
 
 *77
 
 come tax law was amended, and by that amendment Congress apparently intended to overcome the effect of
 
 Towne
 
 v.
 
 Eisner,
 
 and it was particularly declared in the amendment that a stock dividend should be considered income to the amount of its cash value. In
 
 Towne
 
 v.
 
 Eisner
 
 the question. before the court was whether a stock dividend was income, and it was decided that it was not. In
 
 Eisner
 
 v.
 
 Macomber
 
 the question before the court was the power of Congress to tax stock dividends at all, and whether a law which assumed to exercise such power would be unconstitutional, as not being authorized by the Sixteenth Amendment construed in the light of Article I, Section 2, clause 3, and Article I, Section 9, clause 4, of the federal Constitution, which require direct taxes levied by the federal government to be in proportion to the population of the states. Upon this question the court was divided. Mr. Justice Pitney delivered the majority opinion, which was concurred in by four other members, and four members of the court dissented therefrom. The opinion of Mr. Justice Holmes, concurred in by Mr. Justice Day, placed their dissent definitely upon the proposition that the Sixteenth Amendment did overcome the limitations of Article I, and that Congress had not exceeded its powers. The opinion of Mr. Justice Brandéis, concurred in by Mr. Justice Clarke, was based mainly upon the same ground, but it is only fair to state that Brandéis, J., made additional observations to the effect that it might be desirable for the court to reconsider the principles declared in
 
 Gibbons
 
 v.
 
 Mahon,
 
 although he particularly disclaimed the
 
 *78
 
 necessity therefor in the case then under discussion.
 

 It must therefore he admitted that the Supreme Court of the United States is definitely committed to the doctrine that as between life tenant and remainderman so-called stock certificates remain a part of the corpus of the estate.
 

 A stock dividend is in every sense a misnomer. It is a self-contradiction. Stock relates to capital, while dividend expresses the fact of separation from capital. Stock is the representative of capital, and is in that sense an asset of the company, while a dividend upon the instant of declaration becomes a liability. Stock signifies adherence to capital, while dividend signifies separation from it. Stock could have neither value nor existence without capital. A dividend can have neither value nor existence without separation from capital. Stock is considered a liability, but this is only in a technical sense, for the convenience of double entry bookkeeping, and to balance assets and liabilities. It contains no express obligation to pay, and the only implied obligation is that upon dissolution the holder will receive, not the face value of the stock, but such proportionate share of the net assets as the number of shares owned by him bears to the entire number outstanding. ¡Such distribution may be greater or less than the face value, but is rarely, if ever, the same.
 

 If Mrs. Heady had owned interest-bearing bonds of the Richardson Company, the interest would accrue for the benefit of the owner of the life estate, whether paid at the stated intervals or
 
 *79
 
 not, and whether accumulated before or after the death of testatrix, but this arises out of the fact that the interest is a corporate liability without any action of the corporate authorities other than ,the execution and delivery of the bond. A dividend requires the concurrence of two things: First, surplus earnings; second, a corporate resolution by the directors declaring the corporate policy of paying a portion or all of such surplus to the stockholders.
 

 So long as the surplus earnings are carried in the “surplus” account as undistributed earnings, ,all authorities agree that they remain a part of the corpus, and this notwithstanding the fact that during such period they are at all times subject to the action of the board of directors, which has the power to distribute them as cash dividends to stockholders. A declaration of a so-called stock dividend has no other effect, so far as the corporation itself is concerned, than to carry the portion of the surplus covered by such stock dividend into the permanent capital account, thereby placing it beyond the power of the board of directors to withdraw it from corporate use and distribute to stockholders.
 

 It is universally conceded that so long as profits are carried in the “surplus” account they are held for the remainderman, and it is difficult to find a valid reason why they are not
 
 a fortiori
 
 held for him after being transferred to “stock” account. Stock which is subscribed and paid for out pf the private funds of the stockholders comes with greater individual effort than that earned by
 
 *80
 
 ¡tile efforts of the corporation through its officers, ibut after being acquired is in every respect exactly the same as the other. If one goes concededly to the remainderman, why not the other?
 

 , There is something attractive and appealing about a proposition to avoid an arbitrary rigid ,rule and decide controversies according to justice and equity, but it is more important and satisfying to establish general rules whereby all causes can be decided with measurable uniformity. We are concerned with the construction of a will and the giving of direction to a trustee as to the proper administration of his trust. Our judgment should be a declaration of legal principles, rather than a determination of facts and circumstances. There is not a single fact in dispute in this ease.
 

 The Massachusetts rule operates in perfect harmony with the testamentary intent, assuming that when that intent is expressed in general terms there is an implication that corporate policies and the recognized legal relations between the corporation and its stockholders should be the polestar of interpretation.
 

 The Pennsylvania doctrine is not a rule at all, but leaves the chancellor a wide latitude, and discretion and permits an utter disregard of well-settled rules of law pertaining to control by corporations over their net earnings. It results logically and inevitably in substituting the judgment of the court for that of the board of directors, and makes the corporate policies a matter of judicial determination.
 

 It is deplorable that the courts are divided
 
 *81
 
 upon so important a question, but this court in approaching this question for the first time is fortunate in having the benefit of a thorough discussion of the principles involved. We are forced to depart from the greater number of authorities and follow what we believe to be the greater' weight, and hold that stock dividends are a part of the corpus of the estate.
 

 The judgment will therefore be affirmed.
 

 Judgment affirmed.-
 

 Robinson, Jones, Matthias, Day, and Allen, JJ., concur.
 

 Wanamaker, J., not participating.