## FIFTH-THIRD UNION TRUST CO v DAVIS et

Ohio Appeals, 1st Dist, Hamilton Co

No 5082. Decided July 6, 1936

Maxwell & Ramsey, Cleveland, for The Fifth-Third Union Trust Co.

Barry Brannen, Cincinnati, for Clark Montgomery Davis.

H. N. Quigley, Cincinnati, for The Clifton Methodist Episcopal Church.

Paxton & Seasongood, Cincinnati for The Cincinnati Museum Association.

Wm. R. Collins, Cincinnati, Amicus Curiae

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from a judgment rendered by the Court of Common Pleas of Hamilton County, construing the will of Clark W. Davis, deceased.

The action was filed by the testamentary trustee and it asked for a construction in three respects, but only one of such need be noticed here. That one is "Whether Clark Montgomery Davis is entitled to receive as income or dividends unexpended on his care and education, said 1503½ shares of stock of The Union Central Life Insurance Company,......issued as a stock dividend on or about March 18th, 1919."

The dispositive provisions brought under consideration in this action are found in items four and five of the will which we quote:

"4. I direct that all my stock in The Union Central Life Insurance Company standing in my name, or to which I may have title at the time of my death, which may not be required for the satisfaction of the bequests contained in Clauses 2 and 3 of this will, be held in trust for the following purposes:—

"One-half of the income or dividends from said stock, or such part of one-half of said income or dividends as may, in the judgment of the trustee be necessary for the purpose, shall be expended upon the care and education of my son, Clark Montgomery Davis, and it is my wish that every influence may be brought to bear upon him to complete his education by graduation from Harvard or Yale University. The other half of said income or dividends or whatever part of the total of said income or dividends may be unexpended on the care and education of my son, shall be invested and reinvested by the trustee in standard securities paying not in excess of 4% per annum, and permitted to accumulate until the time of payment of the same as hereinafter provided.

"When my son, Clark Montgomery Davis, has in the judgment of the trustee secured a reputable profession or business position and maintained the same for five years, all of the income or dividends from said stock in The Union Central Life Insurance Company which shall remain unexpended and all securities arising from the investment of accumulated dividends shall be paid over to my son, Clark Mont-

gomery Davis, by the trustee and the income and dividends thereafter realized from said stock in. the Union Central Life Insurance Company shall be paid to my said son, Clark Montgomery Davis, during his life, and upon his death, if he die leaving issue, said income and dividends shall be paid share and share alike to his children then living and the surviving issue of any child of my said son which may have died since the death of my said son, such surviving issue to take per stirpes and not per capita, for a period of twenty-one (21) years after the death of my said son, at which time the trustee is directed to transfer and distribute said shares of stock share and share alike among the children of my said son living at that time, and the surviving issue of any child of my said son which may have died prior to said time of distribution, such surviving issue of my deceased child of my said son to take per stirpes and not per capita.

"In case of the death of my said son, Clark Montgomery Davis, without issue surviving him at the time of death, or in case my said son die leaving issue surviving him, which issue shall die prior to the date of distribution of said stock of THE UNION CENTRAL LIFE INSURANCE COMPANY as provided in Clause 4 of this will, I direct that two-thirds of the income or dividends from said stock be paid to my wife, Mary Montgomery Davis, for her life, in case she survives my said son and his issue which may die prior to said date of distribution, and one-third of said income or dividends to my niece Lydia Davis in case she survives my son and his issue which may die prior to said date of distribution. If my said wife does not survive my said son and his issue which may die as aforesaid, or upon her death if she does survive my said son and his issue which may die as aforesaid, said two-thirds of said income or dividends on said stock are to be equally divided between the Clifton Methodist Episcopal 'Church of Cincinnati and the Cincinnati Museum Association. If my said niece Lydia does not survive my said son and his issue, which may die as aforesaid, or upon her death if she does survive my said son and his issue which may die as aforesaid, said one-third of said income or dividends on said stock are to be equally divided between the Clifton Methodist Episcopal Church of Cincinnati and the Cincinnati Museum Association.

"Upon the death of the survivor of my said wife and my said niece if such survivor survives my said son and his. issue dying as aforesaid, or if such survivor of my wife and my said niece do not survive my said son and his issue prior to the date of distribution aforesaid, I direct that my said stock in The Union Central Life Insurance Company be perpetually held in trust by the trustee and the income or dividends therefrom be equally divided between The Clifton Methodist Episcopal Church of Cincinnati and The Cincinnati Museum Association."

Clark W. Davis died on the 26th day of May, 1916. At the time of his death he was a member of the board of directors of The Union Central Life Insurance Company and had been such director for many years. He had been an officer of the company since 1893, a stockholder since 1887, and since 1911 a member of the executive committee, and as such had a voice in determining the policy of the company.

At the time of his death he owner 9050 shares of the capital stock of the par value of Twenty ($20.00) Dollars per share, and all of these shares stood in his name on the books of the company.

The original subscribed and issued stock of the Union Central Life Insurance Company was $100,000.00. In 1908 this was increased to $500,000.00 by means of a 400% stock dividend declared and paid on said stock. On the 1st day of March, 1916, a 300% stock dividend was declared and paid thereby raising the capital stock to $2,000,-000.00, divided into 100,000 shares. This was the state of the capital structure at the time of the testator's death. It will be seen that he owned slightly more than 9% of the total. With the increase of the capital stock and the declaration of stock dividends the number of his shares was greatly increased, but his proportionate share in the assets remained the same.

After his death a further stock dividend of 25% was declared and issued, and it is this stock that is the subject of controversy.

The number of shares that were delivered to the trustee by the executor upon the settlement of the estate was 6034. When this stock dividend was declared a certificate for 1508½ additional shares was delivered. The total capitalization was increased 125,000 shares. The proportion of interest in the assets therefore remained the same.

The question is, whether this stock dis-

tributed as a stock dividend belongs to the life tenant or whether it is a part of the corpus of the trust estate. The answer to this question depends entirely upon the intention of the testator as expressed in his will.

As tending to throw light upon the meaning of the testamentary language the parties stipulated that prior to 1907, The Union Central Life Insurance Company issued both participating and non-participating policies. In that year it discontinued issuing non-participating policies and from that time on that branch of its business has been in process of liquidation. When such liquidation is completed only participating or mutual policies will be outstanding. Under the by-laws the stockholders had and have only a limited right in the profits derived from the participating business. For reasons that appear manifest the board of directors considered it beneficial to the stockholders to capitalize the profits resulting from the non-participating business, and this was done on two occasions during the testator's lifetime by the declaration of stock dividends. The testator, of course, knew of this and it is inferable that he contemplated the continuance of that policy. It is argued from this that he must have intended that the life tenant should receive such stock dividends as might be declared.

Certainly the incident does not manifest any intent on the part of the corporation to divest itself of the title to the profits. Just the contrary. The act irrevocably blends them with the capital.

But we are seeking the intent of the testator. What is there in this incident indicating that intent. If there had been proof that he treated the stock issued to him as a dividend in a manner different from the way he treated his other stock that would throw light upon his attitude. If he had converted the stock dividend into money or property retaining his original stock that would have been some evidence that he considered the stock dividend as income derived from capital. But he did nothing of this sort. He treated the stock received as a dividend just as he treated the original stock. He retained all of it and it now constitutes the bulk of the shares constituting the corpus of this trust. If any inference is to be drawn from the evidence of surrounding circumstances we would say that it is that the testator in his lifetime never regarded a stock dividend as income derived from capital, but

rather regarded it as different evidence of that which he already had, that is, his proportionate share of the net assets of the corporation and that the purpose of converting into capital that part which had been carried as profit or surplus was to place his share in such form that he would thereafter derive more in the way of cash dividends.

This conclusion is strengthened by the fact that during all these years the company declared cash dividend which the testator treated as income derived from capital. He had every reason to conclude that cash dividends would continue to be paid semi-annually and that one-half of the income from such source would be adequate to support and educate his son.

After all, the intent of the testator must be ascertained from the language of the will itself in the light of surrounding circumstances. Under the circumstances what was the testator's intent when he gave to his son during his life the "income or dividends,"—"income and dividends" from the stock?

In reaching a conclusion it should be remembered that at no place does the testator authorize the sale of any stock. During the minority of his son and until he has secured a reputable profession or business and maintained the same for five years, the trustee was authorized to expend not to exceed one-half of the "income or dividends" upon his care and education, the other half to be invested and re-invested, at the end of which time that part "which shall remain unexpended and all securities arising from the investment of accumulated dividends shall be paid over to my son." This language seems to negative the thought that a stock dividend belonged to the son.

The trial court analyzed the language of this will very carefully and reached the conclusion that the expressed intention was that the life tenant should have only the income and that the words "income" and "dividends" were used by the testator as synonyms to indicate that part of the profits of The Union Central Life Insurance Company which should be separated from its capital by appropriate action of its board for distribution to its stockholders and therefore did not include a stock dividend which instead of effecting a separation has the opposite effect of rendering a separation and distribution impossible. We concur in the analysis of the trial court and content ourselves with reference to its

opinion in this case found in **4 O.O. 455**, **et seq.**

If the conclusion is correct that construed most favorably in favor of the life tenant this will bequeathed to him no more than it would had the word "income" been used without any qualifying terms, the case of **Lamb v Lehmann, Trustee, 110 Oh St, 59**, would be controlling. It was held in that case as stated in the syllabus that:

"1. Where a will gives to a trustee, in trust, certain shares of stock in a corporation, with power of sale and reinvestment, and instructions to pay 'the entire net income thereof' to one person for life, with remainder to another, all cash or property dividends declared thereon shall be payable to the person holding the life estate, and all stock dividends, so called, shall become a part of the corpus of the estate and be held by the trustee during the life of the life tenant, and be distributed at his death to the remainderman.

"2. All cash or property dividends declared and paid upon stock dividends shall likewise be payable to the owner of the life estate during his life.

"3. Where a will disposes of the net income upon stock in a corporation, without defining the term 'income' or limiting its meaning within or expanding it beyond that which would depend upon the regular action of the board of directors of such corporation, the testator will be presumed to have had in mind the lawful power and control of the corporation over the use and distribution of profits."

As in our judgment a fair construction of the language in the light of the circumstances discloses an expressed intention to include only cash or property dividends, the trial court was right in holding that this stock dividend was not income to which the life tenant was entitled.

The trial court allowed counsel fees to the attorneys for the trustee and the attorneys for the ultimate beneficiaries of this trust fund. The allowance to the attorneys for the ultimate beneficiaries is urged as error in this court on the ground that there is no authority for the allowance to defendant's counsel of fees payable out of the trust fund in an action brought by the trustee for a construction of the trust instrument. It is further urged that if any authority existed it should have been exercised in favor of counsel for the life tenant as well as counsel for the ulti-

mate beneficiaries. It will be observed that the unborn issue of the life tenant have an intermediate right to the corpus of this trust fund. This estate if it takes effect defeats the rights of subsequent beneficiaries when the issue reach twenty-one years of age.

The contention of the life tenant was hostile to the rights of those who are to take upon his death. If his contention had been sustained the 1508½ shares representing the stock dividend would have been permanently removed from the corpus of the trust and delivered to him as his absolute property.

The ultimate beneficiaries to whose counsel these fees were awarded represented the class to be benefitted by the defeat of the life tenant's contention. They have been successful and if issue are born and survive to the time of distribution this entire block of stock will belong absolutely to such issue.

It is clear that the claim of these counsel for compensation out of the trust fund is supported by different equitable considerations. The services rendered by them were beneficial to the members of the class interested in preserving the integrity of the entire corpus for the benefit of those entitled upon the death of the life tenant. The question then is whether the court had authority in this case to make an award chargeable against the fund that was protected by the services.

That there is authority in a court of equity to allow counsel fees in an action to construe a trust instrument, we think, is clear. McCormick v Hall, (337 Ill. 232, 168 NE 900) 66 A.L.R. 1062; Schneller v Schneller, (356 Ill. 89, 190 NE 120) 92 A.L.R. 838, Trustees v Greenough, 105 U. S. 527. And we find no statutory provision abrogating or restricting this jurisdiction. It is therefore conferred upon the court under the general power to hear and determine actions in equity.

Having the power to award compensation in this class of cases the question reduces itself to the inquiry of whether the court may apportion it among the attorneys whose services have assisted in the correct construction and in the preservation of the corpus of the trust estate for those entitled, for there is no claim here that the aggregate award is excessive. Nor do counsel for the trustee complain of the allotment of a portion of the fee to other counsel.

The only Ohio case on the point is that of **Neff v Neff, 12 Ohio Dec. Reprint, 287**

(2 Disney 768) by the Superior Court of Cincinnati which always occupied a high position in the estimation of the legal profession. The case squarely holds that the court has jurisdiction to award compensation to defendant's counsel for services in an action to construe a will creating a trust. The authorities cited by the court sustain its conclusion.

The trial court did not see fit to award compensation to counsel for the life tenant. The bill of exceptions shows nothing on the subject of fees and therefore we are not advised of the basis upon which the court acted. Presumably the award was made upon the basis of reasonable compensation for services beneficial to the remaindermen after the termination of the life estate. Beyond this legal presumption lies conjecture.

As the court had jurisdiction to make an award and as error in the exercise of jurisdiction is never presumed,  we would not be justified in reversing or modifying this award. There is nothing in the record to indicate an abuse of discretion.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.