## SOUTHERN OHIO SAVINGS BANK & TRUST CO v HAYWARD et

Ohio Common Pleas, Hamilton Co

Decided Sept 3, 1937

Malcolm McAvoy, Cincinnati, for plaintiff.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, for the annuitants.

Oliver G. Bailey, Cincinnati, guardian ad litem for remaindermen.

## OPINION

By GORMAN, J.

This is an action by the present trustee of the estate of Ethan O. Hurd, who died testate on March 24, 1913, to construe certain provisions of his will.

The ninth item of the will reads as follows:

"(Section 9). The entire rest and residue of my estate real or personal, acquired or to be acquired of which I may die possessed I give, devise and bequeath to my wife Anna Cora Carson Hurd and to The Central Trust & Safe Deposit Co., of Cincinnati, Ohio, a corporation under the laws of Ohio, to be held by them in trust as co-executors and co-trustees upon the following uses and trusts viz: They are to collect its income and keep the real estate in first class repair and insured and pay all taxes and assessments. I empower them from time to time as they may deem best, to change said property from real to personal or from personal to real or to make such investments or reinvestments thereof as they may deem best; to sell and convey in fee simple upon such terms as they may deem best or to lease either temporarily or perpetually with or without privilege of purchase or renewal, any or all of said estate real or personal and no purchaser of the fee or any part thereof shall be bound to see to the application of the purchase money paid.

"After the death of my wife, Anna Cora Carson Hurd, such changes of investments or leases for over five years or leases with privilege of purchase shall be made only with the approval of the surviving heirs of legal age named in this section 9. My executors and trustees are to apply the net proceeds of the income from my estate to the payment to those so long as they live

as follows viz: First, to my wife, Anna Cora Carson Hurd, Six Thousand Dollars a year. The remainder of the net income and after my wife's death the whole of the net income is to be divided so long as they live among the following, viz: (1st) To my wife, Anna Cora Carson Hurd, One (1) share. (This is in addition to the Six Thousand Dollars a year already allowed her). (2) To my sister Mary Hurd Robison, One (1) share. (3) To my niece, Anna Hurd Symmes, Two (2) shares. (4) To my great grand niece Marion Hayward, one share. (5) To my great grand nephew, Richard Folsom Hayward one share. To my nephew (6) Richard Hurd, one-half (½) share. To my (7) nephew James D. Hurd, one and one-half (1½) shares. I make this difference in the last two on account of what the former received from the latter on the death of the last survivor of these seven the whole of the estate named in this Section 9 is to go in fee to the lawful descendants at that date living of my nephew Richard Hurd, of my nephew James D. Hurd and of my grand nephew Philip Hayward; to each such descendant then living of whatsoever generation, one equal share in fee. Should there be no such descendants or descendant then the whole of said estate is to go in fee to the Young Men's Christian Association of Cincinnati, Ohio. The devisees to my wife in this will I declare to be in lieu of dower in my estate and in lieu of one year's allowance.

"In the event of her dying before me everything devised to her in this will is to go with and as the rest of the estate devised in trust in Section 9."

On July 31, 1928 after the death of Anna Cora Carson Hurd the Central Trust & Safety Deposit Company resigned as trustee and finally on January 28, 1937, after another bank had served in that capacity the plaintiff became trustee.

Under the terms of the will the trustee therefor is to distribute the whole of the net income to certain designated beneficiaries. Anna Cora Carson Hurd, Mary Hurd Robinson, Anna Hurd Symmes and Richard Hurd are now dead and in accordance with the above quoted section, the three surviving life annuitants are Richard Folson Hayward, Marion Hayward Clancey and James D. Hurd.

There are certain heirs and descendants of James D. Hurd, Richard Hurd and Philip Hayward who, if living at the death of the life annuitants, will be entitled to the corpus of the trust outright.

It will be noticed therefore that under the terms of the will Folsom Hayward, Marion Hayward Clancey and James D. Hurd are now as life annuitants entitled to the income, while at the death of all of these three the lawful descendants of James D. Hurd, Richard Hurd and Philip Hayward are entitled to the remainder.

The trustee is entitled to make changes of investments, but since Anna Cora Carson Hurd is dead, such changes can only be made with the approval of the life annuitants.

Certain changes in investments have been made which we shall set out in detail, and stock and cash dividends declared and paid to the trustee. The question is whether these dividends are to be considered as income payable to the life annuitants, or whether they are corpus to be held by the trustee for the benefit of the remaindermen.

In this case there were periodical sales made by the trustee at the request of the life annuitants and periodical reinvestments made. Both parties have classified these sales and purchases into three groups—those involving the purchase of Cleveland Cliffs Iron Company cumulative preferred stock, the Otis Steel Company preferred stock, and The Youngstown Sheet & Tube Company stock.

Between March 6, 1936 and April 8, 1936 the trustee sold certain securities of the trust amounting to $33,841.87. With the greater portion of these proceeds, $33,466.25, it purchased five hundred shares of 5% cumulative preferred stock of the Cleveland Cliffs Iron Company in the following amounts on the following dates: March 19, 1936—10 shares; March 20, 1936—100 shares; March 21, 1936—15 shares; March 24, 1936 —100 shares; March 25, 1936—100 shares; April 8, 1936—175 shares.

At that time the Cleveland Cliffs Iron Company was in arrears in payment of its preferred dividends approximately $24.75 per share. On December 1, 1936 the board of directors of The Cleveland Cliffs Iron Company declared a cash dividend of $3 per share to the holders of the cumulative preferred stock as of record December 5, 1936. The dividend was payable December 15, 1936, and subsequently the plaintiff, as trustee, received $1,500 in cash as dividends.

Between December 1, 1936 and February 1, 1937 the trustee sold securities at the request and with the consent of the life annuitants for which it received $34,503.82. With $34,195.75 it purchased three blocks

of the seven per cent preferred stock of The Otis Steel Company on the following days and in the following amounts: December 1, 1936—100 shares; December 3, 1936—92 shares; January 26, 1937—100 shares; February 1, 1937—8 shares.

On November 5, 1936 the shareholders of the Otis Steel Company adopted a plan of recapitalization whereby each share of the preferred stock was to be exchanged for one and 28/100 shares of new 5½% convertible first preferred stock and one-half share of common stock.

The plan was declared operative by the board of directors on December 3, 1936, and on that date a cash dividend of 4.12½ cents a share was declared. Under this plan the trustee deposited the three hundred shares of old stock, and received in exchange three hundred and eighty-four (384) shares of the new preferred stock and one hundred and fifty (150) shares of the common stock. The trustee received as a cash dividend at that time $1,579.88.

Between September 26, 1936 and December 7, 1936 the trustee sold various stocks for $52,202.52 and with $51,453.75 acquired 425 shares of The Youngstown Sheet & Tube Company Series A, 5½% preferred stock on the following days and in the following amounts: September 28, 1936—100 shares; October 15, 1936—50 shares; October 23, 1936—100 shares; October 29, 1936— 30 shares and December 7, 1936—145 shares.

The Youngstown Sheet & Tube Company at the time of purchase was in arrears in payment of preferred dividends to the amount of approximately $18 per share. On September 5, 1936 the board of directors declared a dividend of $2.75 per share to the holders of record on September 19, 1936, and payable on October 1, 1936. On 280 shares of this stock the trustee received a dividend of $770.

On November 17, 1936 a dividend of $8.25 per share, payable on December 5, 1936 and on January 20, 1937 another dividend of $9.62½ per share was declared. In all the trustee has received from the Youngstown Sheet & Tube Company the sum of $8,366.87.

In Ohio we have followed the Massachusetts rule set forth in Minot v Paine, 99 Mass. 101, that in the distribution of dividends whether ordinary or extraordinary that the life tenant is entitled to cash dividends and that stock dividends go to the corpus of the remaindermen. See **Lamb v Lehman, 110 Oh St 59, 42 A.L.R. 437; Fifth-Third Union Trust Company v Davis,**

4 O.O. 455, affirmed 7 O.O. 29, 55 Oh Ap 377, (22 Abs 540).

The rules, therefore, applied in Pennsylvania or Kentucky as to extraordinary cash dividends depending upon when they were earned, or whether they are in fact earnings have no application in this state. (For the rules see Hite v Hite, 93 Ky. 257; Cox v Gaulbert, 148 Ky. 407; Earp's Appeal, 28 Pa. 368; Smith's Estate, 140 Pa. 344, 24 A.L.R. 9; 42 A.L.R. 448; 50 A.L.R. 375; 56 A.L.R. 1287; 72 A.L.R. 981; 83 A.L.R. 1261). In passing we might say that New York has followed the Pennsylvania rule so that the cases cited from that jurisdiction are of little assistance.

To the Ohio rule there are two exceptions. If the cash received is in distribution of corporation assets upon liquidation it goes to the corpus. See **Wilberding, Admr. v Miller, 90 Oh St 28**; and likewise when a trustee receives cash and stock in exchange for stock upon a reorganization of a corporation it was held that the cash received was in reality part of the corpus. See **Cleveland Trust Company v Hickox, 32 Oh Ap 69.**

The claim is made here that in each instance the stock purchased had unpaid accumulated preferred dividends and that when the trustee sold the other stocks he was purchasing not only the stock but the arrearages due as well for the corpus. It is strenuously contended that if the dividends in arrears are not considered part of the corpus it will thus be depleted at the expense of the remaindermen. In other words, it is said that this is but a method whereby the life annuitants will by a systematic scheme of sales and purchases made at their request by the trustee increase their income diminishing the corpus.

An examination of the purchase of The Cleveland Cliffs Iron Company stock shows that the trustee acquired five hundred shares between March 6, 1936 and April 6, 1936. At that time the company was nearly five years in arrears in payment upon this cumulative preferred stock. No dividend was declared, however, until December 1, 1926 at which time a cash dividend of $3 per share was voted.

The court presumes that it is the claim of the trustee that since there were arrearages in dividends to the extent of $24.75 per share at the time of the purchase that such a sum should be placed in the corpus of the estate out of dividends declared after the purchase before the life tenants would be entitled to any income.

Such a theory presupposes that the dividends are a guaranteed charge against the corporation and that by paying approximately $65 per share the trustee was giving about $40 for the stock and $24.75 for the dividends in arrears. Such a theory would in effect make the past due dividends a first lien on the stock itself.

There is no claim made that The Cleveland Cliffs Iron Company was reorganized. This was a five per cent preferred stock which was purchased around April 1, 1936 and upon which a cash dividend of $3 was declared December 1, 1936. This was only a normal yield for the stock during the period it was held by the trustee. It was not paid out of depleting the assets of the corporation, but it must be presumed that the directors in declaring the dividend out of earnings were in effect representing a true situation.

It is a fundamental principle in our state that a dividend in its ordinary meaning can legally be declared only from earnings or from surplus. See §§8623-123b, GC; **Thomas v Matthews, 94 Oh St 32; Mente v Graff, 10 N.P. (N.S.) 148.** If that be true then all future dividends declared after December 1, 1936 by the Cleveland Cliffs Iron Company would have to be paid either out of earnings or an accumulated surplus. If paid out of earnings the remaindermen can not complain as the life annuitants are entitled to the income.

There is no showing made in this case that at the time of the purchase of this stock this company had an accumulated surplus. But even if it did, when the dividend is declared under the English and Massachusetts rules which are followed in this state, the life tenant would secure any cash dividend, and the remaindermen the stock dividends. In other words, in this state there is no distinction made between an ordinary current dividend and an extraordinary one. The sole determinative test is the character of the dividend whether payable in stock or in cash. See In Re: Majoribanks (1923) 2 Ch. 307; Lamb v Lehman, supra; Boston Safe Deposit & Trust Co. v Adams et, 219 Mass. 175.

But even under the Pennsylvania or Kentucky rules the life tenant would prevail in reference to the dividends of The Cleveland Cliffs Iron Company. In the absence of proof to the contrary it must be presumed that the directors acted lawfully and paid the dividends out of earnings, and that in the future they will so do.

There may have been considerable argu-

ment in former years as to whether stock dividends are income or corpus, but since the Supreme Court of the United States has held the character of the dividend is determinative it is logical for this state to adopt the Massachusetts rule. See Towne v Eisner, 245 U. S. 418; Eisner v Macomber, 252 U. S. 189.

If we had a different rule in this state then what would be considered the corpus of a trust would be taxable as income in some instances, and what would be considered income in the state might be exempt from federal taxation. The law in its administration should aim at a consistent rather than illogical result.

In view of the fact that dividends are to be paid out of earnings the court is unable to follow counsel's claim that the accumulated dividends in arrears at the time of purchase were almost certain to be paid. All those of The Cleveland Cliffs Iron Company have not been paid as yet, and the evidence shows the others were paid from earnings and not out of capital. Earnings depend on future activities not upon past performances.

But even if paid out of an accumulated surplus the rule in Lamb v Lehman, supra, emphasizes the importance of severing the dividend from the surplus by a positive declaration.

True, our rule following the Massachusetts case is arbitrary, but apparently due to its simplicity of operation not requiring complex accounting solutions it has been adopted by our highest court. This court must, therefore, follow it without questioning either its wisdom or fairness.

There are, however, some facts in reference to the purchase of the stock of The Youngstown Sheet & Tube Company and The Otis Steel Company that are different from the facts in The Cleveland Cliffs Iron Works purchase.

In the case of The Youngstown Sheet & Tube Company stock a dividend was declared to the holders of record on September 19, 1936. The trustee although urged to make the purchase acquired 100 shares on September 28, 1936; 50 shares on October 15, 1936; 100 shares on October 23, 1936 and 30 shares on October 29, 1936. This dividend was to be paid October 1, 1936 and yet the trustee received a dividend on these 280 shares of $2.75 or a total of $770.

When a cash dividend is declared in Ohio it can not be rescinded. **Mitchell v Bookwalter Wheel Co., 4 N.P. (N.S.) 609,** affirmed without opinion **75 Oh St 639.** See also

L.R.A. 1917B 736. The declaration of the dividend severs the amount declared from the corporate funds. It creates a debt due to the stockholder and he has a right to maintain an action for the dividend even though no specific fund is set aside. See **10 Ohio Jurisprudence, p. 456, §332;** Thomas v Laconia Car Co., 251 Mass. 529.

This dividend was declared on September 5, 1936. On September 19, 1936 the trustee owned no stock. When he made the purchase of the two hundred and eighty shares he acquired not only the stock but the debt represented by the dividend. This dividend was not to be considered income so far as the trustee was concerned. He was exchanging funds of the corpus for a stock with a dividend which had already accrued. This $770 so paid on the two hundred and eighty shares is to be considered as corpus and not as income.

On November 17, 1936 the board of directors of The Youngstown Sheet & Tube Company declared another dividend of $8.25 per share payable to the holders of record of December 5, 1936. Clearly, the life tenants were entitled to this dividend on the two hundred and eighty shares purchased in September and October. However, on December 3, 1936 the trustee at the suggestion of the life annuitants had acquired one hundred and forty-five more shares.

The dividend had been declared but the recipients of it were not to be determined until December 5, 1936. The declaration of a dividend as was said before creates a debt. The purchase of the one hundred and forty-five shares on December 3, 1936 was a purchase of not only the stock itself, but also the right to receive the debt due as a dividend. Once having been declared the dividend could not be recalled. It had been declared at the time of purchase, and the trustee would only have to wait two days before he would have a legal claim for it. Nothing but waiting this time was necessary.

The court, therefore, feels in this exchange the dividend of $8.25 on one hundred and forty-five shares of the stock of The Youngstown Sheet & Tube Company should be considered part of the principal and not income.

The court is of the opinion that while ordinarily all cash dividends belong to the life annuitants, those that are declared prior to the purchase of the stock by the trustee, but paid after the purchase, should be considered corpus. This seems logical

for it must be assumed that the price paid for the stock takes into consideraion the dividend that is immediately forthcoming. While the same reasoning could be employed as to stock acquired shortly before a meeting at which a dividend is to be declared, the clear cut distinction is that in such a case there has not been a declaration of a dividend giving the stockholder a right to receive cash for which he could institute an action.

In the Otis Steel Company purchase a recapitalization is involved. So far as the stock exchanged is involved it must be conceded even though denominated a dividend, it is part of the corpus of the trust. See Lamb v Lehman, supra.

On November 5, 1936 a plan for recapitalization was adopted. This was before the trustee acquired any stock. After the stock was acquired by the trustee the plan was approved, and a cash dividend of $4.12½ a share declared.

If this dividend was in the nature of a distribution of the capital assets of the corporation then the remaindermen would be entitled to this amount. See **Cleveland Trust Co. v Hickox, 32 Oh Ap 69.** If, however, it was payable out of earnings or surplus it should be awarded the life tenant.

The report of The Otis Steel Company shows that during the year 1936 it made a net profit of $1,980,149.23, and had more than ample surplus to pay a dividend to the shareholders. When the trustee purchased this stock the plan was not approved. The shareholders had no right to demand its payment. The situation was the same as if the purchase was made two days before a regular quarterly meeting, and at which a dividend expected to be paid was actually declared.

In view of the financial statements of the company we are unable to conclude that this was such a reorganization plan calling for distribution of capital assets. As we view it, it was merely an exchange of stock and a declaration of dividends out of earnings.

If a trustee purchases stock and the next day a dividend is declared, part in cash and part in stock, the life tenant gets the cash and the stock goes into the trust fund. That is the rule in this state.

It is true that the intention of the testator is controlling, and he can use language which would provide for a different distribution. Fifth-Third Union Trust Co. v Davis, supra.

There is nothing in this will which prevents the generally accepted principles from being applied. Counsel for the trustee and remaindermen contended that the fact that the corporation was in arrears in the payment of its dividends changed the situation. The answer is that cash dividends are to be paid from earnings or surplus and not from the fixed assets which give the stock its capital value.

It was argued that inasmuch as the stock was lower than before the dividends were declared the corpus of the trust fund had suffered. It may be that the stock which was sold is even less than the stock now held. It may be that greater cash dividends were declared on the old investments than the new. All of that is beside the issue.

The true test is whether there was a fair exchange of assets for assets. True, when the stock was purchased the surplus which was in the treasury and later used for dividends was considered capital. But, likewise, the accrued earnings and surplus of the corporation which stock was sold went to enhance the amount received by the trustee in the sale on the market.

It is said that the trustee would not have made the exchange had he known of the claim of the life annuitants. We have read the correspondence, and do not believe that it is seriously claimed the life annuitants perpetrated any fraud. Mr. Hayward's letters were most frank, and in detail he pointed out just why he wanted to make the change. After the exchanges were made funds were to be distributed in accordance with the directions of the testator. What those directions and intentions were we have attempted to ascertain.

In accordance with these findings the court holds that all of the stock dividends of the Otis Steel Company; $770 of the dividends of The Youngstown Sheet & Tube Company stock declared September 5, 1936 and $1,196.25 of the dividend of that company declared November 17, 1936 should be considered as corpus. All other cash paid as dividends is to be treated as income and distributed to the life annuitants. In the future all cash dividends are income, while stock dividends are principal to be held by the trustee for the remaindermen.

An entry may be presented in accordance with these findings.