### ARMENTROUT v. ARMENTROUT et.

Probate Court, Allen County.

No. 24076.

Attorneys not given.

## OPINION

By QUATMAN, J.

This is an action for declaratory judgment in which Emma A. (Herbst) Armentrout, life tenant of a life estate established under the terms of the last will and testament of Charles F. Herbst deceased, petitions this court to determine the disposition to be made of 1219 shares of stock of The City Loan and Savings Company, declared and paid by said company as stock dividends. Paul O. Boesel, attorney. was appointed by the court as guardian ad litem to represent the interest of certain minor defendants, remainderman under the aforesaid trust. Thereafter the matter was argued before the court and the case continued pending submission of certain exhibits and agreed upon facts relating to the finan-

cial structure and stock records of The City Loan and Savings Company. Thereafter this cause again came on to be heard and after oral argument the motion of Plaintiff to submit briefs was allowed. Counsel for Plaintiff has filed two very excellent briefs indicating many hours of research on the subject for which the court is most thankful.

The court finds that Charles F. Herbst died testate on February 6, 1947, his will having been admitted to Probate in this court on February 14, 1947. Item 9 of the will, a residuary clause, creates an ordinary life estate for the benefit of Emma A. (Herbst) Armentrout with the remainder to the defendants. At the time of his death, Charles F. Herbst, was the owner of 1300 shares of the stock of the City Loan and Savings Company, Lima, Ohio, and the same passes under item 9th of the will as part of the corpus of the life estate. After testator's death the City Loan and Savings Company, at regular semi-annual directors' meetings, called in December and June, authorized the payment of stock dividends which realized an increase of 1219 shares, leaving an aggregate of 2519 shares in the hands of the administratrix. From the company's earnings and distribution sheet submitted by stipulation there is some evidence to indicate that not all dividends, both cash and stock, were paid from current earnings, i. e., the six months period immediately preceding the declarations, however, it is not seriously contended by the guardian ad litem and it also appears to the court that the distribution was intended by the directors to be made from current income, and not from some surplus earnings account that had been accumulating over a long period of time.

The court is now called upon to decide the issue as to whether or not a stock dividend declared at a regular directors' meeting to be paid from current earnings becomes the property of a life tenant or belongs to the corpus. There being no statutory authority in this state the court must decide the question from primarily an interpretation of testator's intention as expressed in the will and secondarily case precedent.

It is fundamental that the intention of the testator is the pole star that guides the court in interpreting the provisions of a will. The court must look to the four corners of the instrument in order to draw out that intent. The court has searched the will in vain for testator's intent as to the instant question and in truth must conclude that it is just not there. Item 9th of the will in question is the only part of that instrument from which an intent on the part

of decedent as to the mater in issue might be drawn. The pertinent part of that item reads: "All the rest, residue and remainder of my estate be the same real personal or mixed, and wheresoever situate, —, —, —, I give devise and bequeath to my wife, Emma Almeda Herbst for and during the period of her natural life. At the death of my said wife, —, all property devised or bequeathed by this item of my Last Will and Testament, shall be divided equally among my three children, —."

It is obvious that this wording creates an ordinary life estate pure and simple, and this conclusion is not disputed. Neither this item nor any other item of the will refers to disposition of stock dividends and we must, therefore, conclude that the testator intended that they pass according to the law as applied in this situation. The fact that testator failed to retain all previous stock dividends paid during his life time is not impressive for several reasons. There is no defined pattern in the transfers indicating that Charles F. Herbst was establishing an estate for his heirs similar to that established by the will; a sizable portion of the transfers was presumably made for the valuable consideration; the fact that testator did receive stock dividends on numerous occasions would indicate that he was fully aware of this policy of the City Loan and Savings Company. This latter point has a strong influence on the decision in **Fifth-Third Union Trust Company v. Davis,** 1936, Ohio Supp. 251, Id., 55 **Oh Ap 377,** 10 N. E. 2d 4.

Having failed to find any intention on the part of the testator expressed in the will as to the disposition of stock dividends we must therefore turn to the law. The texts, digests and reports are replete with learned writings and opinions as to whether or not stock dividends should go to the corpus or be distributed as income. The issue has been argued in courts throughout the land and it is no tribute that the authoriies are extremely divided. This court shall of necessity confine itself to the holdings of its own jurisdictions although counsel for Plaintiff has very ably and properly reviewed the foreign decisions in his briefs.

The first reported Ohio case involving a similar issue as the instant case is that of **Wilberding, Administrator, v. Miller,** 1914, 90 **Oh St 28,** 106 N. E. 665, L. R. A. 1916A, 722. The stock dividends in that case were paid during a reorganization and out of the assets of the liquidating corporation. The dividends were held to go to corpus. Thereafter the issue was tried in **Ohio Savings Bank & Trust Co. v. Clark,** 1916, 7 **Oh Ap 6,** and the court held: "Dividends remaining in the hands of

the executors, paid to them on stock owned by the testator, pass to his widow (life tenant) whether paid in cash or stock, provided that the actual value of the stock at the time of testator's death be not depleted by stock dividends." (see Syllabus 4)

In 1923 the court in **Lehmann, Trustee v. Endowment Fund Association of the University of Cincinnati, 19 Oh Ap 339,** had both of the above mentioned cases before it. In the Lehmann case, supra, the stock dividend was issued against surplus transferred to capital. There is nothing in the report to indicate if the surplus amount represented accumulated or current earnings other than the statement on **page 341** of **19 Oh Ap.:** "It is a further fact that the surplus, against which was issued the stock in question, was used in the prosecution and enlargement of the company's business."

This apparently was asserted to show good faith on the part of the directors.

It was argued in the Lehmann case, supra, as here, that the Wilberding case, supra, was not controlling in that it involved a distribution of assets on dissolution of the corporation and in answer to this, Hamilton, J., **19 Oh Ap** on **pages 344-345** of the report states: "But the well-considered and lengthy opinion of Judge Johnson leads to the conclusion that the Supreme Court was adopting a rule for Ohio for such cases as that under consideration. We, therefore, feel bound to hold, under this decision, that the stock in question is a part of the corpus of the estate, and not the property of the life tenant."

The case was certified to the Supreme Court as being in conflict with **Lamb v. Lehmann, Trustee, 1924, 110 Oh St 59,** 143 N. E. 276, 42 A. L. R. 437, and is the leading case in Ohio on the question in issue.

Marshall, C. J., in the latter case, reviews at length the decisions of other jurisdictions as well as those in Ohio and concludes that stock dividends shall become a part of the corpus of the tenant. This would appear to be conclusive of the question if it were not here argued that the court had refrence only to extraordinary dividends as opposed to ordinary dividends. This court concludes that in a broad sense the difference being that extraordinary dividends are those paid out of funds other than earnings derived from current operations. It is not clear from the report in the Lamb case, supra, or for that matter any of the reported Ohio cases, whether the stock dividends in question were paid from current or accumulated earnings, however, a reading of the entire case would indicate that those facts were not of

concern. It must be admitted that some jurisdiction, decide the issue on this question, viz, was the stock dividend paid from current or accumulated earnings. Or expressed in another way, was the dividend ordinary or extraordinary.

On **page 73** of **110 Oh St,** on page 280 of 143 N. E. of the Lamb case, supra, the court in reviewing the various decisions states: "The third rule, known as the Massachusetts rule, regards cash dividends, whether ordinary or extraordinary, as income, and regards stock dividends, so called, as capital, without regard to the period when the same were earned."

Whether this is or is not a proper digest of the Massachusetts rule is not important. What is important is that the Ohio Court was aware of this distinction and had the difference in mind when on **page 80** of **110 Oh St,** on page 282 of 143 N. E. it stated: "The Massachusetts rule operates in perfect harmony with the testamentary intent, assuming that when that intent is expressed in general terms there is an implication that corporate policies and the recognized legal relation between the corporation and its stockholders should be the polestar of interpretation."

The court in the Lamb case seems particularly impressed not with the fact that it was dealing with an ordinary or extraordinary dividend but the fact that it was not in truth dealing with a dividend at all. It must be agreed that the word stock dividend is a misnomer for the two are as different as profit and loss. A certificate of stock gives the holder nothing more than a right to receive back a proportionate share of his investment upon dissolvement of the corporation, a right to share in the profits when and if declared by the directors and a right to vote for the directors. Any of these rights may be restricted or enlarged upon by the charter and by-laws, within limitations of law. In the operation of a company's business it may become necessary for a multitude of reasons to increase the capital. This may be accomplished by numerous ways including amongst others a transfer from surplus account. The directors could make such a transfer without issuing new stock simply by transferring figures on the books. Stock is directly related to capital and has no right to earnings until the directors, in their discretion, say so. When earnings, regardless of when earned, are transferred to capital they lose their character as earnings and any certificate of the transfer handed the stockholder is not in true sense a dividend but merely additional evidence of his increased rights in the company. Certainly there could be no complaint in the instant case if the directors in the

exercise of proper discretion had chosen to make the transfer without the issuing of additional stock.

The directors act only in the interest of the corporation and cannot be expected to have in mind a ramification of their act such as we have here. However, the testator, well knowing the policies of the corporation, who fails to express an intent as to the disposition of stock dividends must be presumed to have relied on the corporation to provide sufficient income for the life tenant knowing that stock dividends would go to capital.

The Lamb case, supra, admits the rigidness of its rule and indicates that hardship could result in some instances but concludes that a court should be concerned with legal principles rather than a multitude of facts. It is the observation of this court that if injury does result (which is not argued in this case) it is the fault of the testator and not of the law.

It is also interesting to note that the United States Supreme Court has held stock dividends not to be income for purposes of taxation. See Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521. The present Revenue Act has an express provision regarding the matter, 26 U. S. C. A. Int. Rev. Code, §115(f).

A subsequent case, namely the **Fifth-Third Union Trust Co. v. Davis, 1936, 55 Oh Ap 377,** 10 N. E. 2d 4, 5, Court of Appeals, Hamilton County, holds that stock dividends belong to the corpus and not the life tenant. Throughout the opinion the court seeks to find the intent of the testator and arrives at the above conclusion even though the will specifically stated that: "One-half of the **income** or **dividends** from said stock," etc. shall go to the life tenant.

In view of the cases herein referred to as controlling in this jurisdiction and in view of the fact the court is unable to find an expressed intent in the will, the court is bound to hold that the dividends in question are to be considered as an increase in capital of the life estate and should properly be delivered to the corpus. For the purpose of deciding the issues of this case this court makes no distinction between a life estate or an estate in trust. Entry may be prepared accordingly. Exceptions noted.